William J. BROCK, Plaintiff,

v.

UNITED GRINDING TECHNOLOGIES, INC., et al., Defendants.

No. C–3–00–541.

United States District Court,
S.D. Ohio,
Western Division.

March 23, 2003.

John Randolph Folkerth, Jr., Folkerth & Folkerth, PLL, Dayton, OH, for plaintiff.

Karl R. Ulrich, Toby K. Henderson, Sebaly Shillito & Dyer, Dayton, OH, Michael Gallagher, Gallager & Kaiser, LLP, Kansas City, MO, for defendants.

William Martin Slonaker, Kettering, OH, for mediator.

EXPANDED OPINION; DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. # 16); PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. # 27) OVERRULED; CONFERENCE CALL SET

RICE, Chief Judge.

Plaintiff William Brock began working at United Grinding Technologies, Inc. ("UGT"), formerly known as Sheffield Machine Tool, in 1992.[1] Beginning in 1995, Plaintiff held the position of Inventory Control Clerk. His duties included receiving and placing machine tool parts into inventory, pulling customer orders for shipping, organizing and staging parts for in-house machine manufacturing, working with export documentation, and related duties.

On February 1, 1999, Defendant John Day ("Day") was promoted to the position of Materials Manager, and he became Plaintiff's supervisor. During the month of February, Plaintiff's attendance at work started to become an issue. Brock began exhibiting symptoms of severe depression, and he informed Day about his deteriorating marital situation, which was affecting him physically and mentally. On February 25, 1999, Day had a meeting with Brock to discuss his (Plaintiff's) attendance.[2] After the meeting, Plaintiff's attendance failed to improve, and by the end of April, he had used up all of his sick days and most of his vacation days. When Plaintiff had run out of sick days, Day instructed him to record his absences due to illness as vacation days. Day had been keeping Defendant Dennis Ashurst ("Ashurst"), Operations Manager and Day's supervisor, informed about the attendance issue with Brock. To address Day's concerns regarding Plaintiff's attendance, Ashurst instructed Day to set up a meeting in the beginning of May, 1999, to discuss the situation.

On May 7, 1999, Plaintiff met with Ashurst, Day and Ms. Lori Faust, the Personnel Administrator. The parties disagree as to what options were related to Brock

---

1. The following facts are derived from the evidence submitted by the parties regarding their Motions for Summary Judgment (Doc. # 16, Doc. # 27). Because this Decision addresses cross-motions for summary judgment, the Court has attempted to set forth only undisputed facts. In its substantive analysis, *infra,* the Court will recite additional pertinent facts, construing those facts and all reasonable inferences most strongly in favor of Plaintiff on Defendants' Motion and vice versa.

2. In his Memorandum in Opposition, Plaintiff indicates that he does not recall this meeting with Day (Doc. # 27 at 2). Day's memorandum which memorializes that meeting is attached to Day's affidavit as Ex. UGT–1.

during that meeting. Day and Ms. Faust indicate that Brock was informed that he could take two weeks of unpaid leave to wrap things up or he could go on disability leave. Ashurst recalls only that short-term disability leave was discussed. Ms. Faust indicates that she advised Brock of his FMLA rights and about the short-term disability policy. Plaintiff asserts that Defendants did not mention the FMLA during this meeting.

Following the May meeting, Plaintiff was diagnosed with stress, situational anxiety, and depression by his family physician, Dr. Warren Ljungren, and was prescribed Prozac for the depression and Xanax for the anxiety. He was also given Prilosec for his stomach and diarrhea. Plaintiff elected to take short-term disability leave from May 7, 1999, until June 4, 1999. During the time that Plaintiff was on short-term disability leave, his absences were recorded as Family Care Leave. Two of those days were also listed as vacation days.

Plaintiff returned to work on June 7, 1999. Between June 7th and August 27, 1999, Plaintiff missed an additional 60.5 hours of work. According to Day, he met with Plaintiff in July of 1999, informing him that his attendance was becoming an issue again, and that the company expected better attendance. On August 30, 1999, Day and Ashurst met with Brock and gave him a written warning regarding his attendance. The warning indicated that he could be subject to dismissal for excessive absenteeism, that any absences until December 31, 1999, were to be for physical injury and illness only, and that he must have a doctor's note when returning to work. On October 14, 1999, Brock was ill with depression, anxiety, stomach upset and lack of sleep. He called into work and left a message for Day that he was sick. The next day, Plaintiff returned to work without a doctor's note. Plaintiff's em-

ployment with UGT was terminated at that time.

On November 1, 2000, Plaintiff initiated this instant litigation in this Court, setting forth four claims for relief, to wit: (1) a claim of disability discrimination, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111 et seq.; (2) a state law disability discrimination claim, in violation of Ohio Rev.Code Ch. 4112; (3) a state law claim of disability discrimination, in violation of Ohio public policy; and (4) claims for violations of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. (Doc. # 1).

Pending before the Court are Defendants' Motion for Summary Judgment (Doc. # 16) and Plaintiff's Motion for Summary Judgment (Doc. # 27). For the reasons assigned, Defendants' Motion is SUSTAINED in PART and OVERRULED in PART. Plaintiff's Motion is OVERRULED in its entirety.

## I. Standard Governing Motions for Summary Judgment

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir.

1991)(The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law, Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir. 1994)("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.' " *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Wright, Miller & Kane, *Federal Practice and Procedure,* § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992)("Rule 56 does not im-

pose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## II. Defendants' Motion for Summary Judgment (Doc. # 16)

### A. Plaintiff's Statutory Disability Discrimination Claims (Counts One and Two)

In order to defeat an employer's motion for summary judgment in a disability discrimination case, a plaintiff must establish that he: (1) is an individual with a disability; (2) is qualified to perform the job requirements; and (3) either has been denied reasonable accommodation for his disability, or subjected to an adverse employment decision solely because he is disabled. 42 U.S.C. § 12112(a); *Bratten v. SSI Servs., Inc.*, 185 F.3d 625 (6th Cir. 1999); *Roush*, 96 F.3d at 843. *Dietelbach v. Ohio Edison Co.*, 1 Fed.Appx. 435, 2001 WL 45123 (6th Cir.2001). The foregoing requirements apply to disability discrimination claims under both the ADA and Ohio Rev.Code Ch. 4112, and case law regarding claims brought under the ADA is applicable to the analysis of state law discrimination claims. *See Hoffman v. Fidelity Brokerage Servs., Inc.*, 959 F.Supp. 452, 457 n. 1 (S.D.Ohio 1997) (Weber, J.) ("The essential elements of a claim under the ADA and the Ohio handicap discrimination statute are the same. Therefore, the case law regarding claims brought under the ADA applies equally to claims brought under the Ohio statute.").

In their Motion, Defendants contend that Plaintiff did not suffer from a disability, within the meaning of the ADA, because his alleged disability was not a permanent or long-term condition (Doc. # 16 at 13). Defendants further argue that Plaintiff cannot establish that he was a qualified person with a disability, because his absences were irregular and unpredictable (Doc. # 16 at 11). Because the Court concludes, *infra*, that Plaintiff has not established the existence of a genuine issue of material fact as to whether he is disabled (which is dispositive of Defendants' Motion), only that issue will be addressed.

The ADA defines a disabled person as one who: (1) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual, (2) has a record of such impairment, or (3) does not have an impairment, but is regarded as having one. 42 U.S.C. § 12102(2); *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir.1999); *Ford v. Frame*, 3 Fed.Appx. 316, 2001 WL 92178 (6th Cir.2001). The term "major life activities" includes activities such as walking, working, sitting, standing, lifting and reaching. *Penny v. United Parcel Serv.*, 128 F.3d 408, 414 (6th Cir.1997); 29 C.F.R. § 1630.2(i) ("[M]ajor life activities" include such tasks as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."). Depression and anxiety disorders may constitute an impairment, within the meaning of the ADA, provided that they cause substantial limitations. *Swanson v. University of Cincinnati*, 268 F.3d 307 (6th Cir.2001); *see also Hamilton v. Southwestern Bell Telephone Co.*, 136 F.3d 1047, 1050 (5th Cir.1998) (post-traumatic stress disorder may constitute impairment, if it substantially limits major life activity). However, it is insufficient for individuals attempting

to prove disability status merely to submit evidence of a medical diagnosis of an impairment. *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). Instead, the ADA requires those "claiming the [ADA's] protection ... to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience ... is substantial." *Id.* (quoting *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 567, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999)). "Generally, short-term, temporary restrictions are not substantially limiting." *Roush v. Weastec, Inc.,* 96 F.3d 840, 843 (6th Cir. 1996); *Laughlin v. United Telephone–Southeast, Inc.,* 1997 WL 87218, 107 F.3d 871 (6th Cir.1997)(same); *Curry v. Cyprian Ctr.,* 17 Fed.Appx. 339, 2001 WL 1006181 (6th Cir.2001) (temporary condition does not constitute a disability, within the meaning of the ADA).

In his Memorandum in Opposition (Doc. #27), Plaintiff asserts that, throughout most of 1999 and until March or April of 2000, his depression constituted a debilitating condition which substantially limited his ability to engage in restorative sleep, to relate to others, and to concentrate on simple tasks. He indicates that after he was properly diagnosed and placed on medications, his condition eventually improved. However, he asserts that his condition continues to exist, and that he is subject to occasional episodes, during which his symptoms reoccur. Plaintiff argues that whether he is disabled should be determined without regard to medication or other mitigating factors. In addition, he argues that an individualized assessment is required to determine whether his depression is of sufficient duration to qualify as a disability. Plaintiff's arguments are unavailing.

Beginning with Plaintiff's assertion that his use of medication must be disregarded when determining if he is disabled, the Supreme Court squarely addressed that issue in *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Therein, the plaintiffs were severely myopic individuals who were denied employment with United Airlines as global pilots, on the ground that they failed to meet the company's minimum vision requirement, which was uncorrected visual acuity of 20/100 or better. The plaintiffs' vision was fully correctable with corrective lenses. However, they asserted that, due to their severe myopia, they actually had a substantially limiting impairment, thus rendering them disabled, within the meaning of the ADA. Upon review of the statutory language, the Supreme Court rejected the plaintiffs' argument, holding that mitigating measures must be taken into account in judging whether an individual possesses a disability. 527 U.S. at 482, 119 S.Ct. 2139; *see also Murphy v. United Parcel Serv., Inc.,* 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999) (holding that Murphy, a truck driver, was not disabled under the ADA because his hypertension did not substantially limit his major life activities when he was medicated); *Hein v. All America Plywood Co., Inc.,* 232 F.3d 482 (6th Cir.2000). The Supreme Court has further held that mitigating measures must be considered, regardless of whether they were undertaken with artificial aids, like medications and devices, or were measures undertaken, whether consciously or not, with the body's own systems. *Albertson's,* 527 U.S. at 565–566, 119 S.Ct. 2162. Thus, in the present case, this Court must conduct an individualized assessment, taking into account the medication and other mitigating measures that Brock has taken, to determine whether he is disabled.

In *Swanson, supra,* the Sixth Circuit conducted such an individualized assessment in determining whether a surgical resident at the University of Cincinnati

had established that he was substantially limited by his depression. The resident contended that his condition severely impacted his ability to concentrate, which impacted his organizational, reading and learning skills. He further argued that he was impaired in his sleep and in his ability to communicate and to work. In rejecting the plaintiff's assertion that he was disabled, the Sixth Circuit noted that the plaintiff's testimony indicated that when he was on Paxil and Prozac, the quality of his sleep improved and he recovered his communication abilities. *Id.* at 316–17. It concluded that while the evidence indicated that the resident's depression impacted his ability to concentrate, his medical training record, taken as a whole, indicated that his ability to concentrate was not significantly restricted. The court of appeals further concluded that the plaintiff's "vague allegation of the unknown duration of his depression and the effects of his medication, when viewed with the demonstrated effects of his treatment, fails to establish that he was substantially limited in his sleep, concentration, or communication." 268 F.3d at 317.

In the present case, Plaintiff supports his assertion that he is disabled by citing to the medical progress notes of Dr. Warren R. Ljungren, his family physician (Brock Depo. Ex. D). Dr. Ljungren states in correspondence to Plaintiff's counsel that, on May 7, 1999, Plaintiff was diagnosed with situational anxiety and major depression, brought on by a stressful marital situation. At that time, Plaintiff was prescribed anti-anxiety medication, antidepressant medication, and hypnotics, and appropriate counseling was rendered (*id.*). Dr. Ljungren's progress note for June 4, 1999, indicates that Plaintiff had "resolved the issue in his mind that he must move on. Sleeping better. Appetite coming around." (*id.*) Plaintiff indicates that after he returned to work, his attendance improved, but that he would "still have bad days on occasion." (Brock Aff. & 2). Between June 7th and the date of his termination, Plaintiff had only one additional appointment with Dr. Ljungren regarding his mental health, which took place on August 28, 1999. At that time, Dr. Ljungren wrote, in pertinent part:

> Here to reevaluate depression and anxiety. Has been doing fairly well, staying on the Prozac. Divorce proceedings are dragging out. Also, had stayed home yesterday from work to care for his daughter, who had fever and URI symptoms, which was appropriate. Apparently his employer has called a meeting for Monday, which has made him extremely anxious. States that he has worked there for 9 years, up until his recent divorce, has had a sterling work record ... Not sleeping again over the last several nights. Not quite as bad as he had been several months ago. Had been gaining some weight until the last several days.
> O: In general, the pt. is anxious appearing but alert and oriented.
> A: 1. Depression with anxiety

(Brock Depo. Ex. D). Dr. Ljungren's progress note for October 19, 1999 (four days subsequent to Plaintiff's termination) states that Plaintiff was extremely anxious and nauseous on October 14, 1999, and that he is not sleeping well. (*id.*). The note further states that Plaintiff's divorce papers had just been signed. In December, 1999, or January of 2000, Plaintiff began reducing the prescription dosage of Prozac, and he ceased taking the drug in March or April of 2000 (Brock Depo. at 48–49). Plaintiff took Xanex for anxiety only on occasion (*Id.* at 48).

▮ Construing Plaintiff's evidence in the light most favorable to him, he has failed to create a genuine issue of material fact that he was disabled at the time of his warning letter and his discharge. Plaintiff's evidence does not indicate the degree

to which his sleep was interrupted and the extent to which he was restricted in his ability to concentrate and to relate to others. There is no evidence that he had been *substantially limited* in his ability to sleep, to communicate or to relate to others between June 7, 1999, when he returned to work, and October 15, 1999, when he was terminated. Rather, the evidence indicates only that he was not sleeping well around August 28, 1999, and that he felt anxiety and nausea on October 14, 1999, after his divorce papers were signed. In addition, the evidence indicates that, once Plaintiff began medication, his condition improved and he was able to return to work with only occasional "bad days." Accordingly, in light of the absence of evidence regarding the extent of Plaintiff's alleged limitations, Plaintiff has failed to create a genuine issue of material fact that he was substantially limited in his ability to sleep, to concentrate and to relate to others between June and October of 1999. In addition, in light of the fact that Plaintiff's medication substantially alleviated his symptoms and that he ceased taking medication in the Spring of 2000, Plaintiff has failed to create a genuine issue of material fact that his depression with anxiety was a permanent or long-term condition. Accordingly, the Court concludes that Plaintiff has failed to create a genuine issue of material fact as to whether he is disabled, within the meaning of the ADA and Ohio Rev.Code Ch. 4112. Defendants' Motion for Summary Judgment on Plaintiff's statutory disability discrimination claims (Counts One and Two) is SUSTAINED.[3]

### B. *Disability Discrimination in Violation of Public Policy*

A claim for wrongful discharge in violation of public policy exists if the plaintiff can demonstrate (1) the existence of a clear public policy manifested in a state or federal constitution, statute or administrative regulation, or in common law; (2) the employee's termination would jeopardize that public policy; (3) the employee's termination was motivated by conduct related to that public policy; and (4) the employer lacked an overriding legitimate business justification. *Collins v. Rizkana,* 73 Ohio St.3d 65, 652 N.E.2d 653 (1995); *Montague v. Oakwood Club, Inc.,* 2003 WL 549927 (Ohio App. 8th Dist. Feb. 27, 2003). Herein, it is undisputed that Ohio has a strong public policy against disability discrimination, as demonstrated by Ohio Rev. Code § 4112.02(A). However, because Plaintiff failed to create a genuine issue of material fact that he was disabled, he also has not created a genuine issue of material fact as to whether Defendants' actions would jeopardize Ohio's public policy against disability discrimination. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim of disability discrimination in violation of Ohio public policy (Count Three).

### C. *Plaintiff's FMLA Claims (Count Four)*

The FMLA entitles an eligible employee to twelve weeks of leave per year because of, *inter alia,* a serious health condition that makes the employee unable to perform the functions of the position of such employee or to care for a child with a serious health condition. 29 U.S.C. §§ 2612(a)(1)(C) & (D). During that twelve week period, the employer must maintain the employee's group health coverage. *Id.* § 2614(c)(1). Leave must be granted, when "medically necessary," on an intermittent or part-time basis. *Id.*

---

**3.** Again, because the Court concludes that Plaintiff has not created a genuine issue of material fact that he was disabled, the Court need not address whether he was a "qualified person with a disability," in light of his irregular absences.

§ 2612(b)(1). The Act makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of" these rights, *id.* § 2615(a)(1), and violators are subject to consequential damages and appropriate equitable relief, *id.* § 2617(a)(1); *Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 122 S.Ct. 1155, 1160, 152 L.Ed.2d 167 (2002).

In his Motion for Summary Judgment/Memorandum in Opposition (Doc. # 27), Plaintiff asserts that Defendants interfered with his FMLA rights in two respects.[4] *First,* he argues that Defendants interfered with his FMLA rights by disciplining him and ultimately discharging him based on absences which occurred while he was on FMLA leave (Doc. # 27 at 14). *Second,* Plaintiff asserts that Defendant interfered with his FMLA rights by requiring that he return to work with a doctor's note, rather than allowing him 15 days to obtain medical certification for his absence on October 14, 1999 (*id.* at 15). In their Motion for Summary Judgment (Doc. # 16), Defendants argue that Plaintiff cannot prevail on his FMLA claim, because (1) he was not suffering from a "serious health condition," entitling him to protection under the FMLA, and (2) he failed to request FMLA leave or to tell his employer that he was suffering from a "serious health condition," within the meaning of the FMLA.

### 1. *Serious Health Condition, within the Meaning of the FMLA*

The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital ... or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The Department of Labor's implementing regulations define "continuing treatment" as:

A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:

(i) A period of *incapacity* (*i.e.,* inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

(A) Treatment two or more times by a health care provider ...; or

(B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(a)(2)(i) (emphasis in original). A serious health condition involving continuing treatment may also include:

Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

(A) Requires periodic visits for treatment by a health care provider ...;

(B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

---

**4.** In his Memorandum in Opposition (which is also his Motion for Summary Judgment) (Doc. # 27), Plaintiff states that his claims against Defendants for violation of the FMLA are based upon (1) their interference with his FMLA rights; (2) their failure to notify him of his FMLA rights; and (3) the actions taken by Defendant in retaliation for his exercise of his FMLA rights (Doc. # 27 at 13). Defendants' Motion addresses only Plaintiff's claim of interference with his FMLA rights, and it does not mention the notice or retaliation claims. Accordingly, Defendants have not sought summary judgment on those claims.

(C) May cause episodic rather than a continuing period of incapacity (*e.g.,* asthma, diabetes, epilepsy, *etc.*).

29 C.F.R. § 825.114(a)(2)(iii). A regimen of continuing treatment includes, for example, a course of prescription medication. *Id.* § 825.114(b).

Defendants assert that Plaintiff cannot establish that he had a serious health condition, arguing that he was not incapacitated subsequent to June 4, 1999, when he returned to work, and that he did not receive continuing treatment. Specifically, Defendants note that Plaintiff saw his physician only once (August 28, 1999) after his return from leave on June 7th. Plaintiff responds that his depression constitutes a serious health condition. He indicates that he missed a month of work in May and June of 1999, due to that medical condition. Plaintiff further states that he saw Dr. Ljungren on four occasions after his return to work.

■ Construing the evidence in the light most favorable to Plaintiff, Brock's first diagnosis of depression and anxiety was made in March of 1999, when he consulted with Dr. Teresa C. Schile, a psychologist (Brock Depo. Ex. E; Doc. # 16 at 6). Plaintiff saw Dr. Schile on four occasions: March 11, 1999; March 15, 1999; March 29, 1999; and May 14, 1999 (*id.*). On May 7, 1999, Dr. Ljundren diagnosed Plaintiff with situational anxiety and major depression, brought on by a stressful marital situation. Dr. Ljungren prescribed medication for his condition at this time. Dr. Ljungren's progress notes indicate that Plaintiff visited him on August 28, 1999, to reevaluate his depression and anxiety.[5] Plaintiff also spoke with Dr. Ljungren's office on August 3, 1999, re-

garding his depression, when he indicated that he wished to start weaning himself of Prozac. It is undisputed that Plaintiff was prescribed anti-depressant and anti-anxiety medication, and that Plaintiff engaged in this regimen of treatment over several months. In addition, Plaintiff has testified that symptoms of depression recurred episodically between June of 1999 and October of 1999 and continue to recur. Based in this evidence, Plaintiff has created a genuine issue of material fact that he suffered from a chronic serious health condition of depression, which involved a continuing regimen of treatment, during the relevant time period. Defendant is not entitled to summary judgment, on the ground that no serious health condition existed.

### 2. Failure to Request FMLA Leave or to Notify Employer of his Condition

As stated above, the FMLA entitles an eligible employee to as many as twelve weeks of leave during any twelve-month period if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). However, "to invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave." *Brohm v. JH Properties, Inc.,* 149 F.3d 517, 523 (6th Cir.1998). "An employee need not specifically mention the FMLA when taking leave; all the employee must do is notify the employer that FMLA-qualifying leave is needed." *Chandler v. Specialty Tires of America (Tenn.), Inc.,* 283 F.3d 818, 825 (6th Cir.2002); 29 C.F.R. § 825.303(b).

---

**5.** Although Plaintiff visited Dr. Ljungren on three other occasions after he returned to work in June of 1999, only two occurred prior to his discharge, and neither of these visits involved his depression. Plaintiff's visit on June 23, 1999, was due to a pulled muscle in his back. His visit on September 27, 1999, was due to food poisoning (Brock Depo. Ex. D). Plaintiff's third visit on October 19, 1999, occurred after his discharge.

Plaintiff has alleged that Defendants wrongfully issued a written warning to him, because they considered days that he was absent (before, during and after his Family Care Leave) due to illness and to care for his daughter. In their Motion, Defendants assert that Plaintiff failed to give sufficient notice that his requested time off was covered by the FMLA, noting that a number of federal courts of appeals have required the employee to give sufficient information to his employer such that the employer should be aware that FMLA leave has been requested. Plaintiff responds, citing 29 C.F.R. § 825.303(b), that he was required only to give UGT a reason that qualifies under the Act, such as sickness or the need to care for a sick child or spouse. (Doc. # 27 at 22). He asserts that the regulations place the burden on the employer to make any further inquiries.

29 C.F.R. § 825.303(b), which concerns unforeseeable needs for FMLA leave, states, in pertinent part: "The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means." 29 C.F.R. § 825.303(b). However, 29 C.F.R. § 825.208(a) provides that the employer must determine whether to designate leave requests as FMLA leave based only on information received from the employee or the employee's spokesperson. That regulation further provides that where the request is for unpaid FMLA leave, the employee "must explain the reasons for the needed leave so as to allow the employer to determine that the leave qualifies under the Act." *Id.*

Numerous courts have required the employee to provide his or her employer with some indication that the requested leave is potentially covered by the FMLA. In *Satterfield v. Wal–Mart Stores, Inc.*, 135 F.3d 973 (5th Cir.1998), the plaintiff, a cashier, attempted to take FMLA leave for an unforeseeable medical condition, *i.e.*, pain in her side, which arose on Friday, June 16, 1995. Satterfield asked her mother to deliver a note to Wal–Mart management, indicating that she was having a lot of pain, that she would not be able to work that day, and that she would make up the missed day on one of her days off. 135 F.3d at 978. The plaintiff scheduled a doctor's appointment for the following Tuesday, but she did not advise her employer of that appointment nor of the fact that she would not work until that appointment, at the earliest. Construing the evidence in the light most favorable to Satterfield, the Fifth Circuit held that the plaintiff's statements to Wal–Mart were insufficient to require it to seek additional information regarding her condition. *Id.* at 980–81. The court noted that Satterfield had had three unexcused absences during the three weeks preceding her illness and that she had taken FMLA leave in the past. It thus concluded that "[r]equiring an employer to undertake to investigate whether FMLA-leave is appropriate each time an employee, who has been absent without excuse three times in the preceding three weeks, informs the employer that she will not be at work 'that day' because she is 'having a lot of pain in her side' or is 'sick,' is quite inconsistent with the purposes of the FMLA...." *Id.* at 981.

In *Collins v. NTN–Bower Corp.*, 272 F.3d 1006 (7th Cir.2001), the Seventh Circuit likewise affirmed summary judgment for an employer when the employee advised her employer that she would not be in, because she was "sick." The court concluded that the plaintiff's telephone call was insufficient, as a matter of law, to put her employer on notice of the need for FMLA leave, because "sick" did not imply a serious health condition. *See also Niese*

*v. General Elec. Co.*, 2001 WL 290382 (S.D.Ind. Jan. 31, 2001) ("knowledge that an employee has depression and that she had taken a prior leave of absence is insufficient to put an employer on notice that a request for leave for "Personal Problems & Child care issues" is really a request for leave because of a serious health condition of the employee that makes her unable to perform her job").

In contrast, courts have found that the notice requirement had been satisfied when the employee gave his or her employer some information about the medical condition at issue. For example, the Eighth Circuit in *Spangler v. Federal Home Loan Bank of Des Moines*, 278 F.3d 847 (8th Cir.2002), concluded that the plaintiff had put her employer on notice of a potentially-covered request for leave, when she stated that she would be absent for "depression again." Therein, there was substantial evidence that her employer had knowledge of her past episodes of depression. The Court therefore concluded that her absence due to depression related to her continuing FMLA-qualifying condition. In *Carpenter v. Refrigeration Sales, Corp.*, 49 F.Supp.2d 1028 (N.D.Ohio 1999), the plaintiff likewise gave the employer sufficient notice of her need for potentially FMLA-qualifying leave when she informed her employer that she had hepatitis and would be unable to report for work for the remainder of the week. *See also George v. Associated Stationers*, 932 F.Supp. 1012 (N.D.Ohio 1996) (plaintiff contacted employer and informed it that he had contracted chicken pox).

Each of these cases comports with the FMLA's legislative history, which indicates that the statute was not intended to create a sick leave policy for temporary or minor illnesses:

> The term "serious health condition" is not intended to cover short-term conditions for which treatment and recovery are very brief. It is expected that such conditions will fall within even the most modest sick leave policies. Conditions or medical procedures that would not normally be covered by the legislation include minor illnesses which last only a few days and surgical procedures which typically do not involve hospitalization and require only a brief recovery period.

S.Rep. No. 103–3, at 28 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 30; *Levine v. Childrens' Museum of Indianapolis, Inc.*, 2002 WL 1800254, *10 (S.D.Ind. July 1, 2002). To interpret the FMLA in a such a way that an employer must investigate an employee's leave whenever it is informed that the employee is "ill" or "sick" would certainly create a burden on the employer that Congress did not intend.

█ In the present case, there is no evidence that Defendants were aware that Plaintiff had a serious health condition prior to his Family Care Leave in May and June of 1999. Brock asserts that, upon returning from that leave of absence, Day, Ashurst and Ms. Faust knew that he had been diagnosed with stress, situational anxiety and depression and that he was taking medication. (Brock Depo. at 41) ("Yes, I believe I communicated that to them, that I was on medication for [depression]."). He further testified that he informed Defendants of his need to be absent to care for his sick daughter on August 27, 1999 (*Id.* at 40). Plaintiff asserts that this notice is sufficient to shift the burden to UGT to request additional information to confirm whether his absences qualified for FMLA leave.

Construing the evidence in the light most favorable to Plaintiff, there is no indication that Brock made his employer aware that his absences for his illnesses were potentially FMLA-qualifying. Prior to his taking of Family Care Leave in May of 1999, Plaintiff did not make his employ-

er aware that he was seeking counseling for depression and anxiety related to his marital difficulties. Both before and after his medical leave, Plaintiff states in his affidavit that when he called Mr. Day, "I would usually tell him the reason for my absence, that I could not come in because I was sick, or that I had to take care of my sick daughter." (Brock Aff. ¶ 3). There is no evidence that Plaintiff informed Defendants that, after returning to work in June of 1999, his subsequent "sick" absences were due to a recurrence of his symptoms of anxiety or depression. (See Brock Depo. at 39–40; Day Aff. ¶ 11). Plaintiff further states that when he met with Defendants on October 15, 1999, he "told everyone in the meeting that [he] had been sick." (*Id.* ¶ 4). In addition, upon review of Plaintiff's absentee record subsequent to June 4th, Plaintiff missed work for a variety of health-related reasons, including a work-related shoulder injury (August 11, 16, and 17) and food poisoning (September 27). Thus, Plaintiff's reference to being "sick" cannot be said to have suggested to UGT that he was missing work due to a serious medical condition or that the FMLA was applicable.[6] The fact that UGT knew of his past serious medical condition, due to his use of leave during May and June of 1999 and his continued use of medication for that condition, does not create a duty to inquire whether all subsequent times that Plaintiff is "sick" stem from his depression. *See Levine, supra* (where plaintiff did not give sufficient notice of potentially FMLA-qualifying condition, employer was not precluded from challenging during litigation that plaintiff had a serious health condition, within the meaning of the FMLA). Ac-

cordingly, the Court concludes that, upon construing the evidence in the light most favorable to Plaintiff, there is no genuine issue of material fact that Plaintiff failed to provide information to his employer, indicating that the FMLA was implicated, for any of his absences other than the time he was on Family Care Leave. Because Plaintiff has failed to create a genuine issue of material fact that he gave notice to UGT that his leave requests (other than his Family Care Leave in May and June of 1999) implicated the FMLA, Plaintiff cannot establish that Defendants interfered with his right to FMLA leave, when it disciplined and ultimately terminated him for excessive absenteeism based on those absences (again, excluding his Family Care Leave). Defendants are entitled to summary judgment on Plaintiff's claim of interference with his FMLA rights, to the extent that it based on those absences.

▮ Plaintiff asserts that Defendants also interfered with his FMLA rights by considering time that he was on Family Care Leave as a basis for disciplinary action against him. Defendants assert that this claim is meritless, arguing that there is no evidence that UGT considered Plaintiff's Family Care Leave in determining that his attendance was inadequate (Doc. # 25 at 3). They note that the written warning letter specifically references Plaintiff's "authorized leave of absence." (*Id.;* Day Aff. Ex. UGT–14). Upon review of the evidence, Day testified in this deposition that two of the days that Plaintiff was on Family Care Leave, namely May 17th and 18th, were designated as vacation days and were considered when issuing Plaintiff's written warning.[7] Specifically, Day stated:

---

**6.** By the same reasoning, Plaintiff's statements to his employer on April 27th and August 27th that his daughter was sick were insufficient to indicate that her illness constituted a serious health condition.

**7.** The Courts notes that Plaintiff has not asserted, nor is there any evidence, that the additional absences between May 4th and June 4th of 1999 were considered as a basis for disciplinary action.

Q: As a matter of fact, two of those vacation days actually occurred when he was on family, what do you call it, family care leave? Family care leave, specifically May 17th and May 18th, correct?

A: Yes.

Q: And those days were counted in your calculation of his overall absenteeism which caused you to issue his warning that he might be dismissed due to excessive absenteeism, correct?

A: That was part of the reason, yes.

(Day Depo. at 74–75). Construing this evidence in the light most favorable to Plaintiff, there is a genuine issue of material fact as to whether Defendants considered FMLA-qualifying leave as a basis for disciplinary action, thus interfering with Plaintiff's FMLA rights. Accordingly, Defendants are not entitled to summary judgment on Plaintiff's claim for interference with his FMLA rights, to the extent that the claim is based on interference with his use of FMLA leave on May 17th and May 18th.[8]

As for Plaintiff's argument that he should have been granted fifteen days to provide a doctor's note for his October 14, 1999, absence, Defendants are entitled to summary judgment. Plaintiff asserts that, pursuant to 29 C.F.R. § 825.305(b), UGT was required to give Plaintiff fifteen days to provide medical certification of his need for FMLA leave. Specifically, § 825.305(b) provides, in pertinent part:

(b) When the leave is foreseeable and at least 30 days notice has been provided, the employee should provide the medical certification before the leave begins. When this is not possible, the employee must provide the requested certification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts.

*Id.* The Court questions whether § 825.305(b) is applicable, in light of the fact that Defendants were not on notice that Plaintiff was seeking FMLA leave. Rather, the relevant regulatory provision appears to be § 825.208, which provides the time periods for an employer designating leave as FMLA leave. In relevant part, the regulations provide:

(e) Employers may not designate leave as FMLA leave after the employee has returned to work with two exceptions: (1) If the employee was absent for an FMLA reason and the employer did not learn the reason for the absence until the employee's return (e.g., where the employee was absent for only a brief period), the employer may, upon the employee's return to work, promptly (within two business days of the employee's

---

**8.** The Sixth Circuit has stated, in the context of Title VII claims, that once direct evidence of discrimination has been presented, the burden of persuasion then shifts to the defendant to show that it would have terminated the plaintiff's employment absent the discriminatory motive *E.g., Wexler v. White's Furniture, Inc.*, 317 F.3d 564, 584 n. 10 (6th Cir.2003). Although the Sixth Circuit has not expressly stated that FMLA claims are to be analyzed under the burden-shifting framework applied in Title VII cases, numerous courts within this circuit have applied that paradigm. *See*

*Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir.2001); *Stevens v. Henderson*, 2000 WL 1456919 (S.D.Ohio Sept. 19, 2000) (citing district court cases within Sixth Circuit). Herein, Defendants have not expressly argued that there is no genuine issue of material fact that they would have taken the same actions, absent consideration of the two FMLA-qualifying absences in May. Accordingly, Defendants have not demonstrated that they are entitled to summary judgment on this interference claim on that basis.

return to work) designate the leave retroactively with appropriate notice to the employee. If leave is taken for an FMLA reason but the employer was not aware of the reason, and the employee desires that the leave be counted as FMLA leave, the employee must notify the employer within two business days of returning to work of the reason for the leave. In the absence of such timely notification by the employee, the employee may not subsequently assert FMLA protections for the absence.

29 C.F.R. § 825.208.

As stated, *supra*, Defendants were not given sufficient information by Plaintiff during his absence that his leave was potentially covered by the FMLA. According to Day, Plaintiff had left him a voice mail, indicating that he (Brock) was sick (Day Aff. ¶ 9). Day further indicates that he contacted Plaintiff at home on October 14th, and told Plaintiff that he would need a doctor's note when he returned (*id.* ¶ 9). There is no indication that Plaintiff informed Day at that time that he was absent due to depression. When Plaintiff returned on October 15th, he again only stated that he had been out, because he was "sick." Thus, there is no genuine issue of fact that Plaintiff gave notice prior to his return on October 15, 1999, that he intended to use FMLA leave. Because UGT was not on notice that his October 14th absence implicated the FMLA, Plaintiff has not created a genuine issue of material fact that UGT's request for a doctor's note constituted a request for certification that his leave was necessary for a serious health condition. In addition, Plaintiff has provided no evidence that he ever gave his employer a specific (*i.e.*, suggesting FMLA-qualifying) reason for his absence. Accordingly, the Court concludes that Plaintiff has failed to create a genuine issue of material fact that Defendants interfered with his FMLA rights when he was discharged on October 15,

1999, for failing to have a doctor's note upon his return to work. Defendants' Motion for Summary Judgment on that portion of Count Four is SUSTAINED.

In summary, Defendants are entitled to summary judgment on Plaintiff's claim for interference with his FMLA rights, to the extent that is based on his absences prior to and subsequent to his Family Care Leave and on his discharge on October 15, 1999, for failing to have a doctor's note upon his return to work. Defendants' Motion for Summary Judgment is OVERRULED, to the extent that Plaintiff asserts that Defendants interfered with his FMLA rights when it considered his absences on May 17th and May 18th in taking disciplinary action.

### III. *Plaintiff's Motion for Summary Judgment (Doc. # 27)*

In his Motion for Summary Judgment (Doc. # 27), Plaintiff articulates three claims against Defendants for violation of the FMLA, to wit: (1) interference with his FMLA rights; (2) failure to notify him of his FMLA rights; and (3) retaliation for his exercise of his FMLA rights (Doc. # 27 at 13). Plaintiff asserts that he is entitled to summary judgment on each of these claims.

#### A. *Interference with Plaintiff's FMLA Rights*

Plaintiff argues that he is entitled to summary judgment on his interference claims, arguing that he received a written warning based on time that he spent on Family Care Leave, time that he spent caring for his own illness, and time that he spent caring for his ill child. He further argues that the decision to terminate him for excessive absenteeism and for returning to work without a doctor's note violated 29 C.F.R. § 825.220(b).

As discussed, *supra*, the Court has concluded that, when construing the evidence

in the light most favorable to Plaintiff, he has failed to create a genuine issue of material fact as to whether he gave UGT sufficient notice that his absences (other than his Family Care Leave in May and June) might qualify under the FMLA. The evidence indicates that he did not, thus permitting his employer to consider those absences when discharging him and to require that he bring a doctor's note with him upon returning to work in order to avoid discharge. Construing the evidence in the light most favorable to Defendants (as this Court must do when considering Plaintiff's Motion for Summary Judgment), the Court again reaches the same conclusion. Accordingly, there is no genuine issue of material fact as to whether Defendants interfered with Plaintiff's FMLA rights when it took disciplinary action against him based on his non-Family Care Leave absences and terminated his employment when he failed to provide a doctor's note on October 15th. Plaintiff's Motion for Summary Judgment on his claim that Defendants interfered with his FMLA rights for this conduct is OVERRULED.

■ With regard to Plaintiff's interference claim based on Defendants' consideration of FMLA-qualifying leave, Plaintiff has provided evidence that Defendants considered the absences on May 17th and May 18th, which were listed as both Family Care Leave and vacation days, when issuing the written warning. However, upon review of all of the evidence, there is a genuine issue of material fact as to whether Defendants would have taken the same actions, even if they had not considered Plaintiff's absences on these two dates. *See Weberg v. Franks,* 229 F.3d 514, 522–23 (6th Cir.2000) (once direct evidence of race discrimination offered, employer must prove that it would have ter-

minated the plaintiff's employment absent the discriminatory motive). The August 30, 1999, warning letter identifies his time on Family Care Leave as an "authorized leave of absence," and there is no indication that Defendants considered the time that he was on Family Care Leave, other than May 17th and May 18th, as a basis for disciplinary action. Defendants have also provided evidence that Plaintiff took twenty days of unscheduled leave prior to his Family Care Leave and more than seven additional days of unpaid, unscheduled leave subsequent to his return on June 7, 1999.[9] In light of the number of unscheduled, non-FMLA absences, and that seven of them occurred subsequent to his Family Care Leave, when construing the evidence in the light most favorable to Defendants, the Court concludes that there is a genuine issue of material fact as to whether Plaintiff suffered any harm by the consideration of two days of FMLA-qualifying leave. In other words, there is a genuine issue of material fact as to whether Defendants should be liable for interfering with Plaintiff's FMLA rights when it allegedly considered two days of FMLA-qualifying leave as a basis for disciplinary action. Plaintiff's Motion for Summary Judgment on his claim for interference with his FMLA rights is OVERRULED.

### B. *Failure to Provide Adequate Notice of Plaintiff's FMLA Rights*

Plaintiff alleges that UGT failed to provide him proper written notice of his FMLA rights. As an initial matter, the Court notes that in *Ragsdale, supra,* the Supreme Court rejected the contention that an employer's violation of a notice provision created a *per se* right to relief. In that case, an employee claimed that she should have received twelve additional

---

**9.** Plaintiff's absences between June 16 and August 27 amount to 60.5 hours. Assuming that the work day was 8 hours, this amounts to 7.5625 days of work.

weeks of leave (totaling 42 weeks), because her employer had to provide her notice that it had designated twelve weeks of her leave under the employer's 30 week medical leave policy as FMLA leave. Although the plaintiff's position was supported by the wording of 29 C.F.R. § 825.700(a), the Supreme Court invalidated that regulation, indicating that it fundamentally altered the FMLA's statutory framework, which guarantees twelve weeks of leave. The Court further clarified the requirements of an FMLA claim, stating that to prevail on a claim under 29 U.S.C. § 2617, an employee must establish (1) that the employer violated § 2615 by interfering with, restraining, or denying his exercise of FMLA rights, and (2) that the employee has been prejudiced by the violation. 122 S.Ct. at 1161–62.

Plaintiff asserts that Defendants have failed to meet its notice obligations in three respects. *First,* Plaintiff asserts that he did not receive written notice from UGT, indicating his obligations and the consequences of failing to meet these obligations, and that Defendants failed to provide him with the information itemized in 29 C.F.R. § 825.301(b)(1). *Second,* he asserts that UGT's policies, as set forth in the Employee Information Manual, do not provide an employee notice of his FMLA rights with respect to his own serious health condition. *Third,* Plaintiff asserts that UGT's Family Care Leave policies failed to specify the manner that FMLA leave is to be requested or any explanation of the information that the employee is required to provide. In essence, Plaintiff asserts that UGT could not discipline him or terminate his employment for excessive absenteeism, based on his failures to re-quest FMLA leave in a proper manner, because the company did not adequately and properly inform him of his FMLA rights and obligations.

*First,* Plaintiff asserts that UGT failed to comply with § 825.301(b)(1) and, thus, it cannot take any action against him for failing to comply with the FMLA's requirements, such as the requirement to furnish medical certification. 29 C.F.R. § 825.301(b)(1) provides, in pertinent part, that an employer must provide specific notice of various rights and obligations, including, *inter alia,* notice that leave will be counted against the employee's annual FMLA leave entitlement and the need to furnish medical certification. Section 825.301(c) further provides that such notice "must be provided to the employee no less often than the first time in each six-month period that *an employee gives notice of the need for FMLA leave.*" *Id.* (emphasis added). As discussed, *supra,* construing the evidence in the light most favorable to Defendants, the evidence indicates that Plaintiff did not provide UGT sufficient notice that his absences (other than his Family Care Leave) was FMLA-qualifying. In the absence of such notice, Defendant was not obligated to give the specific notices, as set forth in § 825.301(b). Accordingly, Plaintiff is not entitled to summary judgment on his notice claim on this basis.

Addressing Plaintiff's second and third arguments together, Plaintiff asserts that UGT's employee handbook, the Employee Information Manual, provided inadequate notice of his rights, because it did not cover his rights and responsibilities with respect to his own serious health condition and did not comply with § 825.301(a)(1) [10]

---

**10.** 29 C.F.R. § 825.301 provides, in pertinent part:

(a)(1) If an FMLA-covered employer has any eligible employees and has any written guidance to employees concerning employ-ee benefits or leave rights, such as in an employee handbook, information concerning FMLA entitlements and employee obligations under the FMLA must be included in the handbook or other document. For

(Doc. # 27 at 16). In response to Plaintiff's Motion, Defendants indicate that it complied with the requirements of 29 U.S.C. § 2619, which requires that:

> Each employer shall post and keep posted, in conspicuous places on the premises of the employer where notices to employees and applicants for employment are customarily posted, a notice, to be prepared or approved by the Secretary [of Labor], setting forth excerpts from, or summaries of, the pertinent provisions of [the FMLA] and information pertaining to the filing of a charge.

*Id.* According to the affidavit of Mr. Charles Merriman, an employee of UGT who worked in proximity to Plaintiff, UGT posted information regarding the FMLA throughout 1999 and in the general area where Plaintiff worked (Merriman Aff. ¶ 5). The poster attached to Mr. Merriman's affidavit, is WH Publication 1420, which was prepared by the United States Department of Labor and attached to the FMLA regulations as Appendix C.[11] Brock also acknowledged that various posters were posted at UGT that notified employees of various rights under federal laws (Brock Depo. at 68). He indicated that he "walked by them every day" but did not read them (*id.* at 69–70).

Defendant also argues that Plaintiff was informed of his FMLA rights in 1994 by virtue of the Employee Information Manual. According to Mr. Greg Hunt, UGT's Human Resources Manager, in 1994, Plaintiff received an employee handbook, called the Employee Information Manual (Hunt Aff. ¶ 2). The 1994 Manual included

sections on personal leave, medical leave, and short-term disability. The personal leave section set forth, in detail, the company's FMLA policy, including the right of employees to take FMLA leave for their own serious health condition (*Id.* Ex.). Specifically, it indicated the requirements for eligibility for FMLA leave, when the granting of FMLA leave is appropriate, the relationship between company provided paid leave and FMLA leave, the need for advance notice and medical certification, the company's obligation to maintain the employee's health coverage during FMLA leave and the employee's rights to restoration to his original or equivalent position upon return from FMLA leave, what conduct is unlawful under the FMLA and the Department of Labor's authorization to investigate and resolve complaints (*id.*). The 1994 Manual also discussed company benefits which supplemented the FMLA's requirements, such as extended personal leave, medical leave, and disability leave, including information that use of such leave counted against the twelve week unpaid leave provided by the FMLA (*id.*). Plaintiff acknowledged that he received and "looked at" the 1994 Manual, but did not recall the FMLA provisions therein (Brock Depo. at 67).

Defendants have also provided evidence that Plaintiff received a modified Employee Information Manual in 1996 (Brock Depo. at 69). The company asserts that its FMLA policy is set forth in the Family Care Leave and the Illness Leave provisions. The Family Care Leave policy mirrors, in substance, the 1994 personal leave

---

example, if an employer provides an employee handbook to all employees that describes the employer's policies regarding leave, wages, attendance, and similar matters, the handbook must incorporate information on FMLA rights and responsibilities and the employer's policies regarding the FMLA. Informational publications describing the Act's provisions are available from

local offices of the Wage and Hour Division and may be incorporated in such employer handbooks or written policies.

11. 29 C.F.R. § 825.300 specifically authorizes employers to copy the text of the notice in Appendix C as a means of satisfying the posting requirement.

policy, to the extent it discusses the FMLA's provisions. However, the Family Care Leave policy does not indicate that it applies to an employee's own serious health condition. The Illness Leave policy, which applies to employees who suffer non-work related illnesses, provides up to six months of leave, and indicates that any time spent on illness leave will count against the twelve week FMLA leave entitlement. The policy provides that insurance benefits will be maintained during illness leave and that short-term disability benefits may be available. The provision further informs employees about the relationship between paid leave and FMLA-allowable leave, and that a medical release may be required upon returning to work. Plaintiff does not dispute having received these policies, but he does not recall reading them (Brock Depo. at 69).

■■■ Construing the evidence in the light most favorable to Defendants, there is a genuine issue of material fact as to whether Plaintiff received adequate notice of his FMLA rights. It is undisputed that Defendant complied with the statutory re-

quirement of posting a notice on its premises, and that the posting complied with the requirements set forth by the Department of Labor in its implementing regulations. In addition, the provisions in the Illness Policy indicated, *inter alia*, that illness leave taken for an employee's own medical condition will be counted against FMLA leave, that medical certification may be required and the consequences of failing to provide that certification, and that insurance would be continued during leave. Thus, employees were provided substantial information about UGT's more generous leave policy for employees with serious health conditions.

Even assuming, *arguendo*, that the 1996 Manual is inadequate,[12] there is a genuine issue of material fact as to whether Plaintiff was prejudiced by any omissions in the 1996 Manual.[13] Plaintiff testified that he did not read the notice, which was posted in accordance to 29 U.S.C. § 2619 and 29 C.F.R. § 800.300. He testified that he received and "looked at" the 1994 Manual, but did not recall the FMLA provisions therein (Brock Depo. at 67). Likewise, he

**12.** Plaintiff has asserted that the 1994 Manual was superseded by the 1996 Manual, and that the 1994 Manual should not be considered. Defendants respond that the 1996 Employee Information Manual is a supplement to the 1994 handbook. The 1996 Manual states: "This Information Manual supersedes any and all prior editions. Employees are advised to read this manual carefully and thoroughly as many policies have bee[n] revised. Any questions should be directed to the Company President or the Personnel Administrator." (Faust Depo. Ex. 1 at A–152). Upon receipt of the 1996 Manual, Plaintiff signed an acknowledgment form, which likewise indicated that the "Employee Information Manual replaces the Information Manual currently in print . . . All prior editions of the Information Manual are obsolete." (Brock Aff. Ex. A). Thus, despite the statements of Ms. Faust and Mr. Hunt to the contrary, there is substantial evidence that the 1996 Employee Information Manual superseded the 1994 Manual and that

the 1996 Manual was not a supplement to that earlier edition. Thus, for purposes of assuming facts for the sake of argument, the Court will accept Plaintiff's assertion that only the 1996 Manual should be considered.

**13.** Upon review of the 1996 Manual, the Illness Leave policy does not explicitly state that it, along with the Family Care Leave policy, constitutes the company's FMLA policy. Although the Illness Leave policy appears to give broader coverage than the FMLA, it does not indicate which employees are eligible for FMLA leave for their own serious health conditions, nor does it use the phrase "serious health condition." The Illness Leave policy also fails to indicate that the use of such leave cannot result in the loss of any employment benefit accrued prior to the leave and that employees must be restored to their original or an equivalent position. The Court states no opinion as to whether the 1996 Manual is adequate (or inadequate), as a matter of law.

received the 1996 Manual, but did not recall reading those provisions (*id.* at 69). Thus, construing the evidence in the light most favorable to Defendants, there is no indication that Plaintiff referred to his employer's Manuals and policies in an attempt to ascertain what his FMLA rights were and how to avail himself of those rights. Accordingly, there is a genuine issue of material fact as to whether Plaintiff would have acted any differently had the 1996 Manual contained the information that he asserts is omitted, *i.e.*, specific information about how to request FMLA leave. In other words, there is a genuine issue of material fact as to whether Plaintiff has been prejudiced by any alleged failure on his employer's part to provide the required notice of his rights. *See Ragsdale,* 122 S.Ct. at 1161 (plaintiff cannot prevail on FMLA notice claim where there is no evidence that the plaintiff was prejudiced by the employer's lapse). Accordingly, Plaintiff's Motion for Summary Judgment on his FMLA claim for failure to provide notice of his FMLA rights is OVERRULED.

## C. *Reprisal for Plaintiff Exercising his FMLA Rights*

Plaintiff asserts that UGT retaliated against him for taking protected leave by issuing a written warning for excessive absenteeism and ultimately terminating his employment on that basis. An employer may not retaliate against an employee for taking leave under the FMLA. 29 U.S.C. §§ 2615; 29 C.F.R. §§ 825.220(c); *Chandler v. Specialty Tires of Am. (Tenn.), Inc.,* 283 F.3d 818, 825 (6th Cir.2002); *see Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 314 (6th Cir.2001). "[T]o succeed on a retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." *Spurlock v. Peterbilt Motors Co. Inc.,* 58 Fed.

Appx. 630, 2003 WL 463491 (6th Cir.2003) (quoting *Strickland v. Water Works & Sewer Bd.,* 239 F.3d 1199, 1207 (11th Cir. 2001)). In the absence of direct evidence of the employer's intent to retaliate, courts use the burden-shifting formula employed in Title VII discrimination cases. *Id.; Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 315 (6th Cir.2001).

Plaintiff asserts that he was subjected to reprisal for exercising his FMLA rights. Specifically, he contends that he was given a written warning on August 30, 1999, and that his employment was ultimately terminated on October 15, 1999, because he took FMLA leave in May and June of 1999 and for his subsequent additional absences (Doc. # 27 at 19). Plaintiff argues that he can establish a causal connection between his requests for absences covered by the FMLA in 1999 and his written warning. Specifically, he cites to evidence that Day considered two days when he was on Family Care Leave (May 17th and 18th) and for days when he was caring for his daughter as justification for the written warning, and that Day was criticized on his 1999 performance evaluation regarding parts delivery, which was partially attributable to Plaintiff's absences. Plaintiff also asserts that a causal connection exists between his requests for FMLA leave and his termination in that he was fired following his request for additional time to get a doctor's note for his FMLA leave on October 14, 1999, and that he had previously been disciplined for absences covered by the FMLA.

As discussed, *supra,* construing the evidence in the light most favorable to Defendants, the evidence indicates that, other than the time that Plaintiff was on Family Care Leave, Plaintiff had not given UGT sufficient information for it to be on notice that he was requesting FMLA leave. Plaintiff cannot rely on non-FMLA leave as a basis for his FMLA reprisal claim.

Accordingly, Plaintiff is not entitled to summary judgment, to the extent that his claim is based on this non-FMLA leave.

Again, Plaintiff has provided evidence that two of the days that he was on Family Care Leave were also listed as vacation days and, therefore, were considered as a basis for issuing the written reprimand and for his ultimate termination.[14] However, as discussed above, Defendants have also provided evidence that Plaintiff took twenty days of unscheduled leave prior to his Family Care Leave and more than seven additional days of unpaid, unscheduled leave subsequent to his return on June 7, 1999. Defendants have also noted that Plaintiff's unscheduled absences created a hardship for his department (Day Depo. at 61). In light of the number of unscheduled, non-FMLA absences, and that seven of them occurred subsequent to his Family Care Leave, the Court concludes that there is a genuine issue of material fact as to whether there is causal connection between Plaintiff's usage of Family Care Leave, *i.e.*, FMLA-qualifying leave, and his subsequent written warning and discharge. Plaintiff's Motion for Summary Judgment on his FMLA reprisal claim is OVERRULED.

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. # 16) is SUSTAINED in PART and OVERRULED in PART. Plaintiff's Motion for Summary Judgment (Doc. # 27) is OVERRULED. As a result of the rulings herein, Defendants are granted summary judgment on Plaintiff's disability discrimination claims, pursuant to the ADA, Ohio Rev. Code Ch. 4112, and Ohio public policy. Defendants are likewise entitled to sum-

mary judgment on Plaintiff's claim for interference with his FMLA rights, to the extent that is based on his absences prior to and subsequent to his Family Care Leave and on his discharge on October 15, 1999, for failing to have a doctor's note upon his return to work. Remaining in this litigation are Plaintiff's FMLA interference claim, based on Defendants' consideration of his absences on May 17th and May 18th in Plaintiff's disciplinary action and dismissal; Plaintiff's FMLA notice claim, based on inadequate notice by Defendants of his FMLA rights; and his FMLA reprisal claim.

Counsel listed below will take note that a telephone conference call will be had, beginning at 5:15 p.m., on Tuesday, April 15, 2003, for the purpose of determining the viability of the June 9, 2003, trial date and other dates leading to the resolution of this litigation.

---

**14.** Plaintiff's written reprimand identifies his Family Care Leave as an "authorized leave of absence." Mr. Day indicates that May 17th and 18th were assigned as vacation days, and thus considered when issuing the written warning, because Plaintiff had two days of

vacation days remaining when he began his Family Care Leave. There is no indication that any of the other Family Care Leave absences were considered when issuing the warning.