OPINION
{¶ 1} Plaintiff-appellant Charlene Hapner appeals from a judgment rendered against her on her disability harassment action against her former employer. Hapner contends that the trial court erred in directing a verdict based on its conclusion that she had failed to demonstrate that her employer's actions were sufficiently severe or pervasive to permit the issue of disability harassment to proceed to the jury.
 {¶ 2} After reviewing the record and construing the evidence most strongly in favor of Hapner, we conclude that reasonable minds could only conclude that she failed to show that acts of which she complains were sufficiently severe or pervasive to permit an award of damages for disability harassment. Therefore, we conclude that the trial court did not err by directing a verdict against Hapner with regard to her claim of disability harassment. Accordingly, the judgment of the trial court is affirmed.
 I {¶ 3} Charlene Hapner became employed as a secretary by South Community, Inc. ("SCI") in 1995. In 1998, Hapner began to suffer from hearing loss and, in 1999, she was diagnosed with Meniere's Disease. This condition adversely affects hearing, and can cause vertigo and other symptoms.
 {¶ 4} Hapner claims that after learning of her condition, her supervisor began a "campaign" of harassment and discrimination. Hapner's last day of work for SCI was March 27, 2001; however, she remained on the payroll until June, 2001.
 {¶ 5} Hapner subsequently filed this action against SCI, in which she set forth claims for wrongful discharge, disability discrimination and disability harassment. Following discovery, the trial court rendered summary judgment in favor of SCI on the claim of wrongful discharge. The claims for disability harassment and disability discrimination proceeded to jury trial. During the course of the trial, the trial court directed a verdict in favor of SCI on the claim for disability harassment. Thus, the sole claim presented to the jury was that of disability discrimination. The jury returned a verdict in favor of SCI on that claim.
 {¶ 6} Hapner appeals from the judgment rendered against her on her cause of action for disability harassment.
 II {¶ 7} Hapner sets forth the following as her sole Assignment of Error:
 {¶ 8} "THE TRIAL COURT ERRED IN SUSTAINING THE DEFENDANT'S RULE 50 MOTION BY FINDING THE DISABILITY HARASSMENT SUFFERED BY THE APPELLANT WAS NOT SUFFICIENTLY SEVERE OR PERVASIVE TO ALLOW THE CLAIM TO GO TO THE JURY."
 {¶ 9} Hapner contends that the trial court erred by directing a verdict on her claim for disability harassment. In support, she argues that the evidence presented regarding the actions of her employer was sufficient to permit the issue to reach the jury.
 {¶ 10} This court conducts a de novo review of a trial court's grant of a directed verdict. Schafer v. RMS Realty
(2000), 138 Ohio App.3d 244, 257. Directed verdict motions are governed by Civ.R. 50(A)(4), which provides:
 {¶ 11} "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 12} "The question to be determined involves a test of the legal sufficiency of the evidence to take the case to the jury, and is a question of law, not of fact." Hargrove v. Tanner
(1990), 66 Ohio App.3d 693, 695. Accordingly, the issue is the legal sufficiency of the evidence, rather than its weight, or the credibility of the witnesses. Ruta v. Breckenridge-Remy Co.
(1982), 69 Ohio St.2d 66, 67-68.
 {¶ 13} With this standard in mind, we now address Hapner's claim that she presented sufficient evidence to support her claim of disability harassment. Hapner and SCI agree that to prevail on a claim of disability harassment, Hapner must prove: "(1) that the harassment was unwelcome, (2) that the harassment was based on her disability, (3) that the harassing conduct was sufficiently severe or pervasive to affect the `terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment,' and (4) that either the harassment was committed by a supervisor, or the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action." Hampel v. Food IngredientsSpecialties, Inc. (2000), 89 Ohio St.3d 169, paragraph two of the syllabus.
 {¶ 14} Further, "[i]n order to determine whether the harassing conduct was `severe and pervasive' enough to affect the conditions of the plaintiff's employment, the trier of fact, or the reviewing court, must view the work environment as a whole and consider the totality of all the facts and surrounding circumstances, including the cumulative effect of all episodes of * * * abusive treatment." Id. at paragraph five of the syllabus. "The conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and that the victim must subjectively regard as abusive."Rice v. Cuyahoga Cty. Dept. Of Justice, Cuyahoga App. No. 85576, 2005-Ohio-5337, ¶ 32. "Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment `include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. "`[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment'." Id., quoting, Faragherv. Boca Raton (1998), 524 U.S. 775, 787-88.
 {¶ 15} In this case, Hapner alleges that her direct supervisor, Carol Smerz, began to harass her soon after learning about Hapner's condition. Specifically, Hapner contends that Smerz harassed her by: (1) repeatedly suggesting that she retire because of her disability; (2) steadily increasing her workload; (3) requiring her to provide written reports regarding visits to her health care providers; (4) making "rude" and harassing comments to her; (5) moving her desk and moving a copier beside her desk; (6) reprimanding her; and (7) failing to conduct a one-hour seminar for all employees regarding hearing loss.
 {¶ 16} From our review of the transcript and record, and construing all of the evidence in favor of Hapner, we make the following findings: Hapner's condition was diagnosed in September, 1999. Toward the end of 1999, she was instructed to provide written reports to SCI regarding her treatment. Hapner underwent surgery for the condition in January, 2000. Approximately three weeks later, she had a meeting with Smerz and Gerri Woods who informed her that she should "quit and take disability."[1] Hapner refused.
 {¶ 17} In March of 2000, Smerz asked Hapner to unplug a vending machine that was being replaced. Also in that month, Smerz told Hapner that "she better be able to hear" when she returned from an appointment for a hearing aid fitting.
 {¶ 18} Sometime during the summer of 2000, the photocopier was moved right beside Hapner's desk. Also, Smerz took a vacation. Prior to leaving, Smerz left a handwritten note asking another employee to keep a log regarding Hapner's hearing loss. Smerz also left instructions for Hapner to make arrangements to have an SCI van repaired. Around that time, SCI received a new photocopier. Smerz required Hapner to receive training on the copier and to help others learn how to use the copier.
 {¶ 19} Hapner was reprimanded in September and October of 2000. Then, in October of 2000, Hapner's desk was moved to the back of her workroom. In December of 2000, Smerz told Hapner that she was not "fit" to sit in the receptionist's chair. Finally, in March of 2001, Hapner took disability retirement.
 {¶ 20} Additionally, at some point in this time-line, Smerz required Hapner to decorate a training room, a task that required her to climb a ten-foot ladder. Smerz also refused Hapner's request to conduct a seminar on hearing loss.
 {¶ 21} We turn first to the claim that Hapner was repeatedly told to take disability retirement. Hapner testified to one incident during which Smerz and Wood discussed disability retirement with her in January or February of 2000, following Hapner's surgery. Hapner testified that she refused to take disability retirement at that time. There is no evidence that Smerz or Wood initiated any other conversations on this subject until March, 2001, when Hapner quit working.[2] Further, from our review of Hapner's testimony, it appears that during the first conversation in 2000, Wood was merely informing Hapner of SCI's disability benefits and policies and that Smerz was merely taking notes regarding the conversation. The record does not support a finding that these two incidents, which took place more than a year apart, constitute severe or pervasive conduct; especially given that the first conversation appears to have taken place solely to make sure that Hapner was properly advised of her rights.
 {¶ 22} With regard to the increased workload, we note that Smerz requested that Hapner decorate a room, unplug a vending machine that was being replaced, make arrangements to get a van repaired, and receive training on a new photocopier. There is no indication that these were permanent increases in work; i.e., that she was required to do them on a continuing basis. Instead, it appears that they were all one-time requests based upon specific needs. Hapner admitted that Smerz asked her to decorate the training room because Smerz "knew [Hapner] could do it," since she had previously demonstrated the ability to do this kind of work. Additionally, nothing in the record suggests that these one-time work increases were dissimilar from the sort of assignments that Hapner received prior to the onset of her disability.
 {¶ 23} We next address the fact that Hapner was required to submit medical information. According to Hapner, she was not required to provide written doctor's reports prior to her disability onset date. However, we also note that the record indicates that Hapner was required to provide written medical reports because of the fact that she was taking leave under the provisions of FMLA. Hapner also admitted that she had no knowledge of whether other employees were required to submit such reports under similar circumstances.
 {¶ 24} We now address Hapner's claim that she was harassed because she received reprimands during 2000. The record shows that Hapner first received a reprimand in August of 2000. According to her own testimony, she had become angry over a computer issue and initiated an argument with a co-worker over the matter. She did not indicate that the reprimand was unwarranted. Rather she merely testified that she had not been previously reprimanded. Hapner was also reprimanded in September of 2000 because she gave information to a mortgage company regarding a foster-parent client. Again, Hapner did not claim that the reprimand was unwarranted, and in fact, she testified that she knew she was acting improperly by providing the information.
 {¶ 25} Hapner also claimed that Smerz harassed her by moving a photocopier from its position directly behind Hapner's desk hutch to the front of her desk. Hapner testified to one incident during which a telephone caller had trouble hearing her. However, she admitted that she was able to hear the caller without any problem. Additionally, although several weeks passed after her request, Hapner was provided with a telephone amplifier. Hapner testified that she felt harassed by the moving of the copier and the subsequent moving of her desk; but there was no evidence to indicate that these moves were permanent or done with the purpose to harass.
 {¶ 26} Finally, we note that the three "rude and harassing" comments made by Smerz occurred over the course of an eighteen-month period. In fact, all of the above events occurred over that time span. Some of the events — the written medical reports, the reprimands and the one-time work assignments, for example — cannot be considered harassment, let alone severe or pervasive instances of harassment, since there was a legitimate basis for all of these actions. The remainder of the incidents were infrequent, and Hapner admitted that her work was not affected by these incidents.
 {¶ 27} We agree with the trial court that Hapner failed, as a matter of law, to prove her claim of disability harassment.
 {¶ 28} Hapner's sole assignment of error is overruled.
III
 {¶ 29} Hapner's sole assignment of error having been overruled, the judgment of the trial court is affirmed.
 i. . . . . . . . . . . . . .
Grady and Donovan, JJ., concur.
[1] According to the record, Woods is the director of Human Resources at SCI.
[2] Although Hapner testified that Smerz told her to retire or be fired, the jury returned a defense verdict on Hapner's cause of action for wrongful discharge.