OPINION
{¶ 1} Appellant, Carol Corrado ("Corrado"), appeals from the entry of summary judgment against her by the Trumbull County Court of Common Pleas. On review, and after reviewing the record, we affirm the judgment entry of the trial court.
 {¶ 2} Corrado had sued the Warren-Trumbull County Public Library ("WTCPL") for discrimination on the basis of age, race, and disability. She based her claims for discrimination on R.C. 4112. She also alleged causes of action for intentional infliction of emotional distress, violation of public policy, and breach of contract. However, in this court, she is arguing only two theories of liability: discriminatory termination based on disability and hostile work environment based on disability. Though she concludes that the cause of action for intentional infliction of emotional distress is still a viable cause of action, she has presented no assignment of error or argument in support thereof, so it will be disregarded.[1] Therefore, our analysis will focus only upon these two theories of liability as they relate to the judgment entry entering summary judgment.
 {¶ 3} Corrado was hired as an administrative assistant to the WTCPL director in July 1994. In 1996, she left to work at another library until 1998, when she was again hired by WTCPL, this time to work as a branch manager. She remained as a branch manager until her termination on June 21, 2004.
 {¶ 4} Between 2000 and June 21, 2004, Corrado made numerous complaints regarding her work environment to Ms. Daubenspeck, her supervisor and the head of branch services, and Ms. Wasko, the human resources coordinator of WTCPL. Her complaints were to the effect that she was targeted for harassment by certain employees, that she was not adequately supported by library management, that a hostile work environment existed at her branch, that she labored under intense stress and was forced to take medication for a medical condition that resulted from the work environment to which she was subjected.
 {¶ 5} During the same period, there also were numerous complaints from library employees about Corrado's favoritism toward some employees and her mistreatment of the complainants. Their various complaints resulted in staff meetings, meetings with representatives from the human resources department, emails from library management to Corrado advising her to rectify the employee problems, employee interviews concerning their problems with Corrado, confidential memoranda, corrective action notices, counseling sessions, a grievance and a grievance hearing, and, ultimately, termination of Corrado as an employee of WTCPL.
 {¶ 6} Corrado received a termination notice on June 21, 2004. It consisted of two principal sections, one of which described the incidents leading to her termination; and the other of which described the effects of her performance and behavior.
 {¶ 7} Under the "incidents" section, she was advised of the following:
 {¶ 8} "Continued promotion of a hostile work environment; disregard for library policies; insubordination/resistance to corrective counseling as stated in your 2002 and 2003 Annual Evaluation and Behavior Correction Notices dated 4/16/03, 5/16/03, 6/17/03, 8/21/03 from supervisor."
 {¶ 9} Under the section dealing with the effects of Corrado's performance and behavior were the following statements, in pertinent part:
 {¶ 10} "[T]he Branch staff have continued to endure a hostile work environment[.] * * * [L]ibrary has been put at risk of computer viruses due to negligence in updating defiles in a timely manner; supervisory responsibilities have not been effectively carried out to the detriment of library operations. There continues to be an unnecessary `us vs. them' mentality among long-time staff members and newly hired staff members."
 {¶ 11} Corrado asserts that her disability consists of "emotional illness." Her medical treatment for this condition goes back to 2000, when she contacted her family doctor and was hospitalized for a bleeding ulcer. According to her affidavit in response to the summary judgment motion, her doctor advised her to avoid stress following the hospitalization. When asked by Ms. Daubenspeck in April 2000 about the state of her health, she responded that her doctor told her to avoid stress.
 {¶ 12} On March 26, 2004, Corrado requested a leave of absence pursuant to the Family Medical Leave Act (FMLA).[2]
Her doctor provided a statement that she needed to take a leave of absence due to her "medical condition." The statement further provided diagnoses of her "medical condition," to wit, hypertension, acute reaction to stress, anxiety, and painful respiration/chest pain. In answer to a question as to the approximate date the condition commenced, the doctor answered "3-26-04." The only reference to her past medical history was that "[p]atient has a past history of bleeding ulcers."
 {¶ 13} In terms of communication by Corrado to WTCPL about her medical condition between April 2000 and March 2004, in her affidavit, Corrado cites to two instances that put WTCPL on notice about her medical condition: first, that she used WTCPL's health insurance program to obtain prescription medications; and, secondly, that the director inappropriately informed other library directors at a meeting that she had been hospitalized for ulcers.
 {¶ 14} Corrado sums up her medical condition during this period as follows:
 {¶ 15} "My health deteriorated by leaps and bounds. During a visit to my doctor, I complained about a sore throat and my tonsils. My doctor told me that if I didn't find a way to control my stress, I wouldn't be around to worry about my tonsils. * * * I was living on a steady diet of pills and more pills."
 {¶ 16} Other than using the health insurance plan for her medications and the director's comments about her 2000 hospitalization, the record does not reflect that WTCPL personnel were informed in any greater detail about Corrado's medical condition between April 2000 and March 26, 2004.
 {¶ 17} For example, on August 28, 2003, Corrado initiated a grievance against Ms. Daubenspeck and Ms. Wasko, but the bases for the grievance did not mention her health. Instead, the grievance centered around the work environment and alleged that Corrado was being harassed by Ms. Daubenspeck and Ms. Wasko.
 {¶ 18} Her request of March 26, 2004 for FMLA was processed by Ms. Wasko, who asked Corrado to obtain a second medical opinion from a doctor chosen by WTCPL. A report containing the second medical opinion from that physician is not in the record. Corrado took her leave of absence from March 27, 2004 through June 19, 2004. She was terminated on June 21, 2004.
 {¶ 19} Following her termination, Corrado sued WTCPL. WTCPL filed a motion for summary judgment, to which Corrado responded, and the trial court granted the motion on September 19, 2005. Corrado has pursued a timely appeal to this court, assigning as error the following:
 {¶ 20} "[1.] The trial court erred to the prejudice of appellant in it's [sic] grant of appellee's rule 56 motion after allowing into the record appellant's detailed seven-page affidavit of mental disability and wrongful termination.
 {¶ 21} "[2.] The trial court erred to the prejudice of appellant in its grant of appellee's rule 56 motion based on lack of knowledge of the discriminatory conduct in a hostile work environment claim in the context of disability discrimination while ruling admissible the seven-page affidavit of appellant which was replete with reports of said conduct."
 {¶ 22} In essence, Corrado is contending that her seven-page affidavit attached to her response to WTCPL's motion for summary judgment should have been sufficient to withstand the motion for summary judgment, and that the facts stated therein reflect in sufficient detail her disability and the discriminatory conduct toward her.
 {¶ 23} Summary judgment is proper where (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.[3] The court shall consider "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any."[4] Further, the party seeking summary judgment must point specifically to some evidence that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims.[5] In response, the nonmoving party must set forth specific facts that demonstrate that there is a genuine issue of material fact to be tried. The nonmoving party may not rest upon bare allegations or conclusory statements in his complaint.[6]
 {¶ 24} An additional consideration regarding summary judgment is that in considering whether to grant a motion for summary judgment, the trial court may not weigh the evidence and thereby enter summary judgment to the party with the stronger case: "such weighing of evidence is inappropriate in the summary judgment arena."[7]
 {¶ 25} Corrado claims that she is disabled within the meaning of R.C. 4112.01(A)(13):
 {¶ 26} "`Disability' means a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of physical or mental impairment; or being regarded as having a physical or mental impairment."
 {¶ 27} An emotional or mental illness may constitute a "mental impairment."[8] Such "mental impairment" may take the form of depression, but depression, without more, is not sufficient to constitute a disability:
 {¶ 28} "[A]bsent indications that one or more major life activities have been substantially limited, therefore, the experience of depression is insufficient to constitute a disability."[9]
 {¶ 29} To prove that she has a disability that will satisfy the requirements of R.C. 4112.01(A)(13), Corrado must show the existence of the following three elements: (1) the condition constitutes a physical or mental impairment, (2) the life activity purportedly curtailed as a result of the physical or mental impairment constitutes a major life activity; and (3) the physical or mental impairment substantially limits this major life activity.[10]
 {¶ 30} A "disability" for purposes of Chapter 4112 of the Ohio Revised Code is to be distinguished from a "serious health condition" for purposes of FMLA. The two are not equivalent.[11] One may have a "serious health condition" to qualify for FMLA, and still not have a "disability" to sustain a cause of action under Chapter 4112.[12] Corrado makes no claim of retaliation for having exercised her right to take time off under FMLA. Instead, she is asserting that the information provided to WTCPL in connection with her request for FMLA laid the groundwork for a disability claim under Chapter 4112.
 {¶ 31} Corrado further argues that the disability was the reason for her termination and that, therefore, she was discriminated against because of her disability. She asserts that the circumstances of her termination fit within the elements stated by the Supreme Court of Ohio and this court:
 {¶ 32} "`In order to establish a prima facie case of (disability) discrimination, the person seeking relief must demonstrate (1) that he or she was (disabled), (2) that an adverse employment action was taken by an employer, at least in part, because the individual was (disabled), and (3) that the person, though (disabled), can safely and substantially perform the essential functions of the job in question.'"[13]
 {¶ 33} If Corrado were able to establish a prima facie case of disability discrimination, another burden-shifting exercise takes place such that the burden would then shift to WTCPL to provide a legitimate, non-discriminatory reason for her termination. As stated by this court:
 {¶ 34} "[T]he burden then shifts to the defendant to provide a legitimate, non-discriminatory reason for the action. * * * If the defendant can establish a legitimate, non-discriminatory reason for the action, the plaintiff must show that the defendant's stated reason was a pretext for impermissible discrimination. * * * This burden shifting exercise was derived from the analysis set forth by the United States Supreme Court inMcDonnell Douglas Corp. v. Green."[14], [15]
 {¶ 35} However, our analysis does not need to reach the burden-shifting exercise of McDonnell Douglas, because we do not believe that Corrado has satisfied the more basic burden-shifting exercise of Dresher v. Burt. She has not satisfied the elements of having a "disability" for purposes of Chapter 4112.
 {¶ 36} In order to overcome WTCPL's motion for summary judgment after it has pointed to some evidence that affirmatively demonstrates that Corrado has no evidence to support her disability claim, Corrado must then set forth specific facts to show that there is a genuine issue to be tried.[16] She may not rest upon conclusory statements in her complaint or in her affidavit in response to WTCPL's motion for summary judgment.[17]
 {¶ 37} Even if we were to assume that the "medical condition" diagnosed by Corrado's doctor was a serious enough illness to satisfy the first prong of the disability requirements under Chapter 4112, Corrado has not set forth specific facts to show, under the second and third prongs of the "disability" definition, that a major life activity is curtailed, and that such major life activity is substantially affected by the mental impairment.
 {¶ 38} In her seven-page affidavit, she does not discuss her diagnoses of depression, anxiety, high blood pressure, and high cholesterol, except to say that she has depression and anxiety and that she will be on medication "for the rest of my life."
 {¶ 39} Nor does she specifically say which major life activity will be substantially affected by her disability. Of the major life activities listed in R.C. 4112.01(A)(13) ("caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working"), the only one that may be marginally impacted is "working." Even here, however, she says, "I knew I could do my job and do it well if the administration would just give me the support that I needed." Elsewhere in the affidavit she says, "I could not understand what was happening or why these people were destroying my life." Note that these are not specific facts to support her theory that a major life activity is substantially affected; they are merely conclusory statements that lack probity on the elements required to prove a disability.
 {¶ 40} Corrado continued to work following her hospitalization in 2000 in her position as branch manager until she took family medical leave in March 2004. In her December 2001 performance appraisal, Corrado met or exceeded performance standards in all nineteen performance categories; and in her December 2002 performance appraisal, she was indicated as "needing improvement" in only two of nineteen categories, meeting or exceeding all the standards in the other categories. Her December 2003 performance appraisal reflected that she needed improvement in nine of nineteen categories, but she was not furnished with this appraisal until January 2004, after the library director says in his affidavit that he had made a decision to terminate her.
 {¶ 41} Even in her brief in this court, Corrado argues that she "could safely and substantially perform the essential functions of her job as librarian," but that she would need reasonable accommodation to do so. Absent, however, is any specific showing of the limitations affecting Corrado that would need accommodation. She makes generalized and conclusory statements that she is disabled without any specific facts to back it up.
 {¶ 42} Therefore, if her working was substantially affected, according to Corrado, it resulted more from inadequate support from the administration and staff of WTCPL than it did from any medical condition she may have had.
 {¶ 43} In addition, for the reasons indicated, there is no support in the record that Corrado was "regarded as having a physical or mental impairment" in order to make her medical condition qualify as a "disability" for Chapter 4112. Her work history with WTCPL effectively stopped on March 26, 2004, the day she applied for FMLA. Prior to that date, there is no fact in the record that Corrado can point to in order to demonstrate that she was "regarded as having a physical or mental impairment" by either her supervisors or her staff. Further, there is no "record of physical or mental impairment" prior to March 26, 2004. The only record of a medical problem is her hospitalization for a bleeding ulcer in 2000, for which her doctor has prescribed medication.
 {¶ 44} Though Corrado argues that her condition was disabling, that the stress from work was making her ill, and that she lived on a diet of prescription medication, no specific information concerning an actual disability was communicated to WTCPL personnel such that they would have been put on notice that she was disabled.
 {¶ 45} The following statement by Corrado is illustrative of the fact that, between 2000 and March 26, 2004, she was not regarded as having a disability nor was there a record of physical or mental impairment:
 {¶ 46} "There were some days when I just could not deal with the treatment inflicted by the administration. The physical pain became overwhelming. On those days, I called my supervisor Daubenspeck to explain that I had to go home. The funny part was she never even had to ask why. I guess she felt her mission of destroying my health and my career was succeeding. All she ever said was as long as you have coverage for the branch."
 {¶ 47} Thus, in the burden-shifting exercise, Corrado has pointed to no specific fact to rebut the fact that no major life activity was curtailed, or that her medical condition substantially affected a major life activity. We conclude that in the burden-shifting summary judgment exercise, Corrado has not set forth specific facts as to the existence of a disability that would have satisfied the requirements of Chapter 4112 and that would have created a genuine issue of material fact to be tried.
 {¶ 48} The first assignment of error is without merit.
 {¶ 49} In the second assignment of error, Corrado argues that she endured a hostile work environment on account of her disability. She asserts that her seven-page affidavit is replete with instances that give credence to her contention that a hostile work environment existed on account of her disability. In her affidavit, Corrado enumerates various incidents that she characterizes as harassment. They include the requirement that she apply for an upgraded library manager position, a comment from her supervisor that the supervisor did not want to hear about Corrado's problems, the lack of input on hiring subordinates, a remark from a subordinate calling Corrado a liar, and the requirement that Corrado obtain a second opinion regarding her request for FMLA leave.
 {¶ 50} The knowledge that she had a mental disability, Corrado argues, must have existed because WTCPL is a small library system, because her seven-page affidavit and deposition testimony demonstrate that she had a mental disability that was known to the administration of WTCPL, and that when she applied for FMLA in March 2004 the director knew of her mental disability.
 {¶ 51} "Hostile environment" harassment is "harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment."[18]
 {¶ 52} To prevail on a claim of hostile environment harassment involving a disability, Corrado must prove the following:
 {¶ 53} "`(1) [T]hat the harassment was unwelcome, (2) that the harassment was based on her disability, (3) that the harassing conduct was sufficiently severe or pervasive to affect the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," and (4) that either the harassment was committed by a supervisor, or the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.'"[19]
 {¶ 54} In contrast to Corrado's argument that a hostile work environment existed on account of her disability, WTCPL disputes that she had a disability, and points out that her argument on appeal fails to address the above elements required to prove a harassment claim. WTCPL correctly notes that Corrado's argument under this assignment of error is devoted exclusively to the fact that she had a disability and that persons in a supervisory capacity must have known of her disability. There is no argument that the harassment was "sufficiently severe or pervasive," that the conditions of her employment were affected by the harassment, or that the harassment was committed by a supervisor or not corrected by a supervisor once the fact of the harassment was known.
 {¶ 55} Not only do we agree with WTCPL that Corrado's argument fails to establish a nexus between a hostile work environment and her alleged disability, but the evidence in the record indicates that Corrado was herself the creator of a hostile work environment. While we can accept that a hostile work environment existed, because WTCPL in its notice of termination to Corrado twice stated that such an environment existed, such hostile work environment was of Corrado's own doing. While Corrado perceives this case to be a hostile environment case, we do not perceive it as such. In fact, Corrado was fired for creating a hostile environment.
 {¶ 56} In addition, we do not believe that Corrado has established that harassment, if any, on the part of WTCPL or its employees was "severe and pervasive," or that it affected the conditions of her employment, or that it was caused or permitted by supervisory personnel who knew about her disability.
 {¶ 57} Instead of being a hostile environment case, this is a case where the central issues are whether Corrado had a disability, and, if so, whether she was terminated on account of a disability. Instead of meeting her burden to establish a genuine issue of material fact on the issue of whether she had a disability, she failed to satisfy this burden for purposes of Chapter 4112.
 {¶ 58} The second assignment of error is without merit.
 {¶ 59} The judgment of the trial court is affirmed.
Ford, P.J., Rice, J., concur.
[1] See App.R. 12(A)(2) and 16(A)(7).
[2] Section 2612(a)(1)(D), Title 29, U.S.Code.
[3] Civ.R. 56(C).
[4] Id.
[5] Dresher v. Burt (1996), 75 Ohio St.3d 280, 292.
[6] Smith v. L.J. Lewis Ents., Inc., d.b.a. Action EmergencyAmbulance (Sept. 28, 2001), 11th Dist. No. 2000-T-0052, 2001 Ohio App. LEXIS 4413, at *13, quoting Civ.R. 56(E).
[7] State v. 1805 Wertz Ave., S.W. Canton, Ohio and $445.00 inU.S. Currency (June 2, 1997), 5th Dist. No. 1996CA00288, 1997 Ohio App. LEXIS 3272, at *7.
[8] R.C. 4112.01(A)(16)(a)(ii).
[9] (Citation omitted.) Cooke v. SGS Tool Co. (Apr. 26, 2000), 9th Dist. No. 19675, 2000 Ohio App. LEXIS 1784, at *14.
[10] (Citations omitted.) Maracz v. United Parcel Serv.,Inc., 8th Dist. No. 83432, 2004-Ohio-6851, at ¶ 29. See, also,Sutton v. United Air Lines, Inc. (1999), 527 U.S. 471,482-483.
[11] See Brock v. United Grinding Technologies, Inc.
(S.D.Ohio 2003), 257 F.Supp.2d 1089.
[12] Id. at 1110.
[13] DeCesare v. Niles City School Dist. Bd. of Edn.,154 Ohio App.3d 644, 2003-Ohio-5349, at ¶ 19, quoting Hood v.Diamond Products, Inc. (1996), 74 Ohio St.3d 298, paragraph one of the syllabus.
[14] McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792.
[15] (Citations omitted.) DeCesare v. Niles City School Dist.Bd. of Educ., supra, at ¶ 20.
[16] See Dresher v. Burt, supra, at 293.
[17] See Smith v. L.J. Lewis Ents., Inc., d.b.a. ActionEmergency Ambulance, supra, at *13, quoting Kaliszewski v.Stevens Towing (Nov. 9, 1990), 11th Dist. No. 89-L-14-144, 1990 Ohio App. LEXIS 4876, at *6-7.
[18] Hampel v. Food Ingredients Specialties, Inc. (2000),89 Ohio St.3d 169, paragraph one of the syllabus.
[19] Hapner v. S. Community, Inc., 2d Dist. No. 21023,2005-Ohio-6674, at ¶ 13, quoting Hampel v. Food IngredientsSpecialties, Inc., supra, at paragraph two of the syllabus. (Hapner case substituted the word "disability" for the word "sex" in the Hampel case.)