[Cite as *Daudistel v. Village of Silverton*, 2014-Ohio-5731.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| MICHAEL DAUDISTEL, | : | APPEAL NO. C-130661 |
| | | TRIAL NO. A-1107111 |
| Plaintiff-Appellant, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| VILLAGE OF SILVERTON, | : | |
| | | |
| and | : | |
| | | |
| MARK WENDLING, | : | |
| | | |
| Defendants-Appellees, | : | |
| | | |
| and | : | |
| | | |
| JOHN AND JANE DOE EMPLOYEES AND ELECTED AND APPOINTED OFFICIALS OF THE VILLAGE OF SILVERTON, | : | |
| | : | |
| Defendants. | : | |
| | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed from is: Affirmed

Date of Judgment Entry on Appeal: December 26, 2014

*Hardin, Lazarus, Lewis & Marks, LLC, Donald Hardin* and *David E. Hardin,* for Plaintiff-Appellant,

*Schroeder, Maundrell, Barbiere & Powers, Lawrence E. Barbiere* and *John W. Hust,* and *Dinsmore & Shohl* and *Bryan E. Pacheco*, for Defendants-Appellees.

Please note: this case has been removed from the accelerated calendar.

**CUNNINGHAM, Presiding Judge.**

{¶1}   Plaintiff-appellant Michael Daudistel, former police chief for defendant-appellee the Village of Silverton ("the Village"), appeals from the judgment of the trial court granting a motion for judgment on the pleadings in favor of the Village and its city manager, defendant-appellee Mark Wendling, on claims for disability discrimination, hostile work environment, intentional and negligent infliction of emotional distress, violation of due process, and civil conspiracy. We affirm.

### Background Facts

{¶2}   Daudistel, a longtime civil service employee of the Village, who was diagnosed with cancer during his employment, was terminated by the Village pursuant to allegations of wrongdoing.  Daudistel appealed the termination to the Silverton Civil Service Commission ("the Commission"), but he retired during the pendency of his civil service appeal and began receiving retirement benefits.

### Dismissal of the Prior Administrative Action

{¶3}   After the Village accepted Daudistel's retirement as a "resignation," it moved to dismiss the civil service appeal based on Commission Rule 14.01 that provided the following:

The acceptance by the City Manager of the resignation of a person discharged before a final action on the part of the Commission will be considered a withdrawal of the charges and the separation of the employee concerned shall be recorded as a resignation and the proceeding shall be dismissed without judgment.

2

{¶4} After a hearing on the Village's motion to dismiss, the Commission determined that Daudistel's retirement was elective, as it was not involuntary due to age, and that such a retirement was the equivalent of a resignation for purposes of the rule. In accordance with the rule, it dismissed Daudistel's civil service appeal without judgment.

{¶5} Daudistel then appealed that decision to the Hamilton County Court of Common Pleas in the case numbered A-1001251. Daudistel brought the appeal pursuant to R.C. 2506.01 and 124.34, both of which provide a common pleas court with jurisdiction to review certain administrative decisions. The case was assigned to a magistrate, who determined that the Commission's decision should be affirmed. The magistrate explained that by retiring during the pendency of the civil service appeal, Daudistel was able to convert his discharge for cause, which jeopardized his retirement benefits, to a resignation in good standing with all of his retirement benefits intact. Daudistel objected to the magistrate's decision, but the trial court overruled the objections and adopted it.

{¶6} During the appeals to the Commission and to the court of common pleas, Daudistel persistently argued that his retirement was not voluntary, but rather a "constructive discharge," a position that was rejected by the Commission and the court. The court also rejected Daudistel's challenges to the pretermination process. Daudistel did not appeal the trial court's judgment affirming the Commission's decision dismissing Daudistel's administrative appeal. Instead, he filed the instant action in the court of common pleas, bringing claims against the appellees for disability discrimination, hostile work environment, intentional and negligent infliction of emotional distress, violation of due process, and civil conspiracy.

*The Complaint in the Instant Action*

{¶7}   According to the allegations of the amended complaint, in December 2004, Daudistel entered into an employment contract with the then city, and now village, of Silverton, concerning his civil service position as police chief.  Wendling, who was the city manager responsible for the day-to-day operations of the Village, signed the contract on behalf of the Village.  The contract specified that the Village had created the Chief of Police position pursuant to the governing charter, and provided for automatic yearly renewals of the employment contract, unless the parties agreed otherwise in writing.   In March 2005, Wendling wrote a memorandum to the Village of Silverton Council requesting a raise for Daudistel, who he characterized as a "solid, dedicated employee who goes above and beyond the call of duty."

{¶8}   In May 2005, Daudistel underwent surgery for the diagnosis of the condition of Barrett's esophagus with extensive high-grade glandular dysplasia/carcinoma in situ, a protected disability recognized under the Americans with Disability Act and R.C. 4112.01.  As a result, Daudistel was unable to work for three months.  When he did return to work, he was restricted to light duty work "as tolerated," based on his physician's recommendation, as the disability continued to limit his ability to work and his health was weakened by his medical condition.

{¶9}   Daudistel alleged that upon returning to work, he was treated in a hostile and discriminatory manner by Wendling, in concert with the John and Jane Doe defendants, identified only as "employees and elected and appointed officials of the [Village] of Silverton."  Daudistel alleged that these defendants had "maliciously" acted to discredit him, to weaken or destroy his contractual rights and benefits by persistently attempting to breach the terms of his employment contract and to

change his employment status to that of an "at-will employee," and to ultimately remove him from his civil service position without cause.

{¶10} Specifically, Daudistel alleged that Wendling, in front of a civil service member, had accused Daudistel of the loss of money from the Village's police property room, improperly terminating an employee, being responsible for a lawsuit filed against the city, assigning personnel in an undercover sting operation that triggered a lawsuit against the Village, and inconsistently promoting the personal relationships between his employees.

{¶11} Also, in March 2006, Wendling asked Daudistel to agree to a revised employment agreement that stated that Daudistel would become an "at-will" employee. Daudistel refused to sign the agreement. At about the same time, Wendling presented an ordinance to the Village's council that he had drafted, which would have changed Daudistel's employment agreement by making him an "at-will" employee. The proposed ordinance indicated that Daudistel had "affirm[ed] and acknowledge[d]" that he was an "at-will" employee. Council did not pass the ordinance.

{¶12} Wendling presented a second ordinance to council in May 2006, after Daudistel had made it known that he was seeking a physical disability retirement. The proposed ordinance would have amended Daudistel's existing employment agreement with the Village by reducing vacation leave benefits and sick leave payment benefits at the time of Daudistel's expected disability retirement. This ordinance, which council did not approve, also contained terms indicating that Daudistel had agreed to the changed terms. After the two ordinances failed to pass, Wendling sent Daudistel a letter stating that his contract would not renew after May 31, 2006, and asking Daudistel to agree to the change. Daudistel rejected Wendling's

request that he sign the letter, and voiced concern that Wendling was motivated by Daudistel's poor health and medical disability. Daudistel then applied for a disability retirement, and alleges that Wendling's "hostil[ity]" towards him lessened until May 2007, when Wendling learned that Daudistel had withdrawn his application for a disability retirement.

{¶13} On October 23, 2008, Wendling "unexpectedly" served Daudistel with notice of a disciplinary hearing, to be held on the following day, but no charges were included in the notice. The following day, Wendling informed Daudistel that the hearing had been rescheduled until October 30, 2008, and he "threw" a new notice of disciplinary hearing on Daudistel's desk. No charges were outlined in this notice either, and no hearing was conducted on October 30.

{¶14} Then, on October 31, 2008, Daudistel received notice that he had been placed on administrative leave with pay until the pretermination hearing. No revised or additional charges were outlined in that notice, or in a subsequent notice delivered in April 2009.

{¶15} Although Daudistel had been advised that the pretermination hearing would occur within two weeks of his placement on administrative leave, the Village did not conduct any hearing until June 12, 2009. At that hearing, for the first time, the Village announced that the charges against Daudistel were "neglect of duty, incompetency, inefficiency, failure of good behavior, misfeasance, malfeasance, and nonfeasance." The Village also announced at this hearing a charge related to drug paraphernalia from the property room that had allegedly been recovered in Daudistel's desk.

{¶16} Following the June "pretermination hearing," Daudistel was allegedly provided insufficient time to submit additional evidence and written argument

6

before the final decision on the case terminating him, which Wendling issued on September 11, 2009. On September 9, when challenging the amount of time, Daudistel's attorney notified the Village that Daudistel would have to apply for retirement before the decision "to protect his good name and reputation," but also that his retirement "would amount to a constructive discharge resulting from [Daudistel's] employment in a hostile work environment."

### *The Answer and Motion for Judgment on the Pleadings*

{¶17} The appellees answered Daudistel's amended complaint and asserted, in part, that his claims were barred by res judicata, as demonstrated by exhibits to the answer, which included a transcript of the hearing before the Commission and copies of the Commission's decision, the magistrate's decision, and the trial court's entry of judgment adopting the magistrate's decision in the administrative appeal.[1] The appellees then moved for judgment on the pleadings, arguing that res judicata barred some of the claims because it was determined that Daudistel had voluntarily resigned, was not constructively discharged, and was not denied due process. They also contended Daudistel's allegations were insufficient to state a claim for relief for some of the causes of action, and that political subdivision immunity applied to preclude the litigation of some of the claims.

{¶18} The trial court granted the appellees' motion without issuing a decision discussing the basis for the ruling. The court then dismissed Daudistel's complaint without addressing the claims against the Doe defendants. Daudistel appealed that decision, but this court dismissed the appeal because the one-year period for service on the unidentified parties had not expired and the judgment in

---

[1] Daudistel never challenged the propriety of the trial court's consideration of these exhibits in ruling on the motion for judgment and, instead, he cited the exhibits in his memorandum opposing the appellees' motion.

favor of the appellees did not contain Civ.R. 54(B) language. *Daudistel v. Village of Silverton*, 1st Dist. Hamilton No. C-120611, 2013-Ohio-2103. The trial court subsequently issued a final order that entered judgment in favor of all the defendants, and Daudistel again appealed.

### Analysis

{¶19} In a single assignment of error, Daudistel argues that the trial court erred by granting the appellees' motion for judgment on the pleadings. Daudistel posits two main issues for review. First, Daudistel contends that the trial court erred by giving preclusive effect to the court of common pleas' determinations that exceeded the limited issues necessarily decided by the Commission when the Commission dismissed the appeal of his termination. Second, he contends that judgment on the pleadings was inappropriate because he pled valid and substantiated claims.

### Standard of Review

{¶20} The standard for a motion for judgment on the pleadings pursuant to Civ.R. 12(C) is similar to the standard for evaluating a Civ.R. 12(B)(6) motion to dismiss, except that Civ.R. 12(C) permits the court to consider the complaint and answer, where a Civ.R. 12(B)(6) motion limits the court's consideration to the complaint. *See State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 569, 664 N.E.2d 931 (1996). "Under Civ.R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be draw therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." *Id.* at 570. Because a Civ.R. 12(C) motion

presents only questions of law, it may be granted only when no issues of material fact exist and the movant is entitled to judgment as matter of law. *Id.*

{¶21} We apply a de novo review to a trial court's decision to grant judgment on the pleadings. *Euvrard v. The Christ Hosp. and Health Alliance*, 141 Ohio App.3d 572, 575, 752 N.E.2d 326 (1st Dist.2001).

### *Disability Discrimination*

{¶22} Daudistel alleged that his cancer was a disability and that the appellees discriminated against him in his employment because of his disability in violation of R.C. 4112.02. To establish a prima facie case for disability discrimination, Daudistel had to demonstrate as follows: (1) he is disabled; (2) he suffered an adverse employment decision, at least in part because of disability; and (3) that, despite his disability, he could " ' safely and substantially perform the essential functions of the job in question.' " *Goss v. Kmart Corp.*, 11th Dist. Trumbull No. 2006-T-0117, 2007-Ohio-3200, ¶ 23, quoting *Hood v. Diamond Prods., Inc.*, 74 Ohio St.3d 298, 658 N.E.2d 738 (1996), paragraph one of the syllabus.

{¶23} The appellees' motion for judgment focused on whether Daudistel had suffered an adverse employment decision because of his disability. This court has adopted federal law in defining an adverse employment action as a "materially adverse change in the terms and conditions of employment." *Brown v. Dover Corp.*, 1st Dist. Hamilton No. C-060123, 2007-Ohio-2128, ¶ 27, citing *Kocsis v. Multi-Care Mgt., Inc.*, 97 F.3d 876, 885 (6th Cir.1996).

{¶24} The appellees argued that Daudistel could not demonstrate that he had suffered an adverse employment decision because the trial court in the prior action rejected Daudistel's claim that he had been constructively discharged and found that he had voluntarily retired/resigned from his position with the Village. Thus, they

9

argued that Daudistel was precluded from relitigating these issues under the collateral estoppel prong of res judicata.

{¶25} Ohio law regarding res judicata encompasses both "claim preclusion" and "issue preclusion." *See, e.g., State ex rel. Schachter v. Ohio Pub. Emp. Retirement Bd.*, 121 Ohio St.3d 526, 2009-Ohio-1704, 905 N.E.2d 1210, ¶ 27. " 'Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action.' " (Internal citation omitted.) *Id.*

{¶26} Issue preclusion, also known as collateral estoppel, "precludes the relitigation, in a second action, of an issue that had been *actually and necessarily litigated and determined in a prior action* that was based on a different cause of action." (Emphasis added.) (Internal citations omitted.) *Id.* at ¶ 28.

{¶27} "Where the judgment of a court is not dispositive on issues which a party later seeks to litigate, res judicata is not applicable." *Ameigh v. Baycliffs Corp.*, 81 Ohio St.3d 247, 250, 690 N.E.2d 872 (1998), citing *State ex rel. Brookpark Entertainment, Inc. v. Cuyahoga Cty. Bd. of Elections*, 60 Ohio St.3d 44, 47, 573 N.E.2d 596 (1991). "This is true even if the prior court decision has discussed the issues that are the subject of the current litigation." *Id.*

{¶28} Daudistel concedes that some preclusive effect may be given to the prior action. But he contends that any preclusive effect must be limited to the narrow procedural issue of whether he was entitled to a hearing upon his termination, citing *Walters v. City of Brecksville*, 8th Dist. Cuyahoga No. 53660, 1988 Ohio App. LEXIS 1706, *3 (Apr. 21, 1988). We agree with Daudistel that the prior action did not by necessity involve whether he was constructively discharged,

whether his retirement was voluntary in the context of a constructive-discharge claim, or whether there were defects in his administrative process.

{¶29} But the prior action did by necessity involve a resolution of whether Daudistel had "elected" to retire, such that his retirement was equivalent to a resignation. And the Commission found that Rule 14.01 applied, that Daudistel's termination had been converted to a resignation, and that it had to dismiss the appeal. Upon its review of the Commission's decision in the R.C. 2506.01 appeal, the trial court affirmed the Commission's resolution of these issues. The trial court also held that it had no jurisdiction to proceed with an appeal under R.C. 124.34, because an appeal pursuant to that statute is limited to "matters concerning removal or reduction in employment for disciplinary reasons." *Pitts v. Ohio Dept. of Transp.*, 67 Ohio St.2d 378, 382, 423 N.E.2d 1105 (1981). The court concluded that there could be no removal because Daudistel "chose to retire while his appeal was still pending before the Commission."

{¶30} Notwithstanding our rejection of collateral estoppel under these circumstances with respect to the constructive discharge and the voluntariness of the retirement in the context of a constructive discharge, we agree with the appellees' contention that they were entitled to judgment on the pleadings on this disability-discrimination claim.

{¶31} An employee can be either actually or constructively terminated. The test for constructive discharge "is whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign." *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 664 N.E.2d 1272 (1996), paragraph four of the syllabus.

{¶32} The effect of Rule 14.01, as applied to Daudistel, and as he well knew, was to convert Daudistel's termination into a resignation and to protect his retirement benefits. Daudistel elected to resign, even though he had the opportunity to contest his firing, and, thus, he cannot now claim that the Village wrongfully terminated him—actually or constructively.

{¶33} Daudistel further alleges that he suffered adverse employment actions when the appellees attempted to make him an at-will employee. But attempts to change Daudistel's employment contract to that of an at-will employee cannot serve as an adverse employment action because the attempts were not successful, according to the complaint, and thus no materially adverse change in the terms and conditions of employment occurred. *See Brown*, 1st Dist. Hamilton No. C-060123, 2007-Ohio-2128. Thus, the appellees are entitled to judgment on the pleadings as to Daudistel's disability-discrimination claim.

### Hostile Work Environment

{¶34} Daudistel also alleges that he was subjected to a hostile work environment based on his disability. To prevail on this claim for disability harassment, he must show (1) that the harassment was unwelcome, (2) that the harassment was based on his disability, (3) that the harassing conduct was sufficiently severe or pervasive to affect the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action. *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169, 729 N.E.2d 726 (2000), paragraph two of the syllabus (sexual harassment); *Corrado v. Warren-Trumbull*

*Cty. Pub. Library*, 11th Dist. Trumbull No. 2005-T-0120, 2006-Ohio-4661, ¶ 52 (harassment based on disability); *Hapner v. S. Community, Inc.*, 2d Dist. Montgomery No. 21023, 2005-Ohio-6674, ¶ 13 (harassment based on disability).

{¶35} A hostile work environment is "one that is permeated 'with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Brown*, 1st Dist. Hamilton No. C-060123, 2007-Ohio-2128 at ¶ 38, quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1996). The conduct must be offensive both to a reasonable person and to the actual victim. *Id.*; *Hapner* at ¶ 13.

{¶36} "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Faragher v. Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Rice v. Cuyahoga Cty. Dept. of Justice*, 2005-Ohio-5337, 970 N.E.2d 470, ¶ 32 (8th Dist.); *Hapner* at ¶ 14. The conduct must be extreme to change the terms and conditions of employment. *Chapa v. Genpak, LLC*, 10th Dist. Franklin No. 12AP-466, 2014-Ohio-897, ¶ 35. *Gatsios v. Timken Co.*, 5th Dist. Stark No. 2011CA00185, 2012-Ohio-2875, citing *Harris* at 21-22.

{¶37} The conduct alleged in Daudistel's complaint did not, as a matter of law, rise to the extreme level necessary to be so severe and pervasive as to constitute a hostile work environment. *See Brown* at ¶ 38-46; *Hapner*, 2d Dist. Montgomery No. 21023, 2005-Ohio-6674, at ¶ 13-27. In essence, he alleges that the appellees tried to change the terms and conditions of his employment. But he acknowledges that they failed to do so: council did not pass the ordinance about which he complains, and he refused to agree to the changes in his employment contract. We

do not think that the unsuccessful attempt to change the terms and conditions of employment through proper legal channels can amount to a hostile work environment. Further, the majority of the actions about which he complains within his claim for hostile work environment relate to his ultimate termination. But he voluntarily converted the termination into the retirement. We do not think the recitation of the procedural steps that the appellees took to terminate him prior to his conversion of the termination into a voluntary retirement state a claim for a hostile work environment.

{¶38} Daudistel has failed to allege any change in the terms, conditions and privileges of employment or in any other matter related to his employment. *See Hampel*, 89 Ohio St.3d 169, 729 N.E.2d 726, at paragraph two of the syllabus. There are simply no factual allegations in his complaint suggesting that his job changed as a result of what he alleges to be harassment.

{¶39} It is well established that a claim for a hostile work environment requires harassment sufficiently severe and pervasive to alter the terms, conditions and privileges of employment or any matter directly or indirectly related to employment. *Hampel*, at paragraph two of the syllabus. Daudistel's complaint fails to allege "severe and pervasive" harassment. And it fails to allege any change or alteration in the terms, conditions or privileges of his employment or in any matter related to his employment. Even accepting everything in Daudistel's complaint as true and drawing all inferences in his favor, the complaint fails to state a claim for employment discrimination of the hostile-work-environment variety. Consequently, the trial court did not err in granting the appellees' motion for judgment on the pleading on Daudistel's hostile-work-environment claim.

### *Intentional and Negligent Infliction of Emotional Distress*

**{¶40}** As to the intentional-infliction-of-emotional-distress claim, the Ohio Supreme Court has stated that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress[.]" *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983), syllabus. To state a claim for intentional infliction of emotional distress, the plaintiff must show that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 375; *Reamsnyder v. Jaskolski*, 10 Ohio St.3d 150, 152-153; 462 N.E.2d 392 (1984); *Mann v. Cincinnati Enquirer*, 1st Dist. Hamilton No. C-090747, 2010-Ohio-3963, ¶ 25.

**{¶41}** In this case, the conduct alleged in Daudistel's complaint does not, as a matter of law, rise to the extreme and outrageous level necessary for a prima facie case of intentional infliction of emotional distress. *See Mann* at ¶ 25-26. Daudistel's claim for negligent infliction of emotional distress also fails. A plaintiff may not recover under this claim absent proof that "the defendant's negligence produced [an] actual threat of physical harm to the plaintiff or any other person." *Heiner v. Moretuzzo*, 73 Ohio St.3d 80, 82, 652 N.E.2d 664 (1995), quoted in *Strasel v. Seven Hills Ob-Gyn Assocs.*, 170 Ohio App.3d 98, 2007-Ohio-171, 866 N.E.2d 48, ¶ 14 (1st Dist.). Daudistel did not allege that the appellees' actions placed him or anther person in fear of physical danger; therefore, the trial court properly entered judgment on the pleadings for the appellees on Daudistel's negligent-infliction claim. *See Heiner; Strasel.*

### *Due Process*

{¶42} Daudistel argues that the appellees, acting under the color of state law, denied him due process of law when the Village terminated him without providing him adequate notice of the charges against him. *See* 42 U.S.C. 1983. To succeed on a claim for deprivation of due process under the Fourteenth Amendment, Daudistel must show that a deprivation of life, liberty, or property occurred. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-570, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Classified civil servants have property rights in their continued employment, and these rights cannot be taken from them without due process of law. *Cleveland Bd. of Edn. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Ohio Assn. of Pub. School Emp., AFSCME, AFL-CIO v. Lakewood City School Dist. Bd. of Edn.*, 68 Ohio St.3d 175, 176, 624 N.E.2d 1043 (1994).

{¶43} But because Daudistel's termination was converted to a resignation under Rule 14.01, Daudistel's due-process claim necessarily fails. Under these circumstances, we conclude that Daudistel cannot show that the appellees deprived him of his property right in his continued employment, an essential element of the claim. Therefore, the trial court properly determined that Daudistel can prove no set of facts to support his due-process claim.

### Civil Conspiracy

{¶44} Daudistel also alleges a claim for civil conspiracy. A civil conspiracy claim in Ohio consists of "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419, 650 N.E.2d 863 (1995). A civil-conspiracy claim requires the existence of a separate underlying unlawful act. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475, 700 N.E.2d 859 (1998); *Gosden v. Louis*, 116 Ohio App.3d 195, 219, 687 N.E.2d 481 (9th

16

Dist.1996). Because Daudistel cannot succeed on any of his other causes of action, his civil-conspiracy claim based on these causes of action fails to state a cause of action. *See Morrow v. Reminger & Reminger Co., LPA*, 183 Ohio App.3d 40, 2009-Ohio-2665, 915 N.E.2d 696, ¶ 40 (10th Dist.) (determining that where plaintiffs failed to state causes of action for falsification and fraud, the plaintiffs' civil-conspiracy claim based on falsification and fraud likewise failed to state a cause of action.)

{¶45} This claim also fails because, as the appellees argue, Daudistel cannot show a conspiracy. Generally, in the context of civil liability, where all defendants, allegedly coconspirators, are members of the same collective entity, corporate or municipal, there are not two separate "people" to form a conspiracy. *See Bays v. Canty,* 330 Fed.Appx. 594, 594 (6th Cir.2009); *Hull v. Cuyahoga Valley Joint Vocational School Dist. Bd. of Edn.*, 926 F.2d 505, 509-510 (6th Cir.1991); *Ohio Vestibular & Balance Ctrs., Inc. v. Wheeler*, 2013-Ohio-4417, 999 N.E.2d 241, ¶ 28-30 (6th Dist.), citing *Kerr v. Hurd*, 694 F.Supp.2d 817, 834 (S.D. Ohio 2010) (explaining that "[a] corporation cannot conspire with its own agents or employees.") The exception is if the employees or agents are acting outside the scope of their employment or agency. *See Bays; Bailey v. Priyanka Inc.,* 9th Dist. Summit No. C.A. 20437, 2001 Ohio App. LEXIS 4558, *14-15 (Oct. 10, 2001); *Scanlon v. Gordon R. Stofer & Bro. Co.*, 8th Dist. Cuyahoga Nos. 55467 and 55472, 1989 Ohio App. LEXIS 2528, *44 (June 22, 1989).

{¶46} Here, Daudistel alleges that Wendling's acts were "all in the course and scope of his employment" as city manager for the Village. With respect to the John and Jane Does, Daudistel alleges only that these defendants are "employees and elected and appointed officials of * * * Silverton, whose actual identities and nature

17

and extent of their participation in the events leading up to Plaintiff's termination are unknown at this time." The complaint alleges that they were agents of the same entity—the Village—and is so devoid of any other allegations with respect to these defendants and any unlawful acts they allegedly committed that we cannot read the complaint as sufficiently stating a claim for civil conspiracy. Accordingly, we hold that the trial court did not err in granting judgment on the pleadings for the appellees on this claim.

### *Political Subdivision Immunity*

{¶47} Because we have determined that none of Daudistel's claims should have survived the appellees' motion for judgment on the pleadings, we do not address Wendling's argument that he is entitled to immunity from Daudistel's claims pursuant to R.C. Chapter 2744, the Political Subdivision Tort Liability Act.

### *Conclusion*

{¶48} The assignment of error is overruled and the judgment of the trial court is affirmed.

Judgment affirmed.

**DINKELACKER** and **DEWINE, JJ.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.